STATE OF CONNECTICUT *v.* JOHN LONERGAN
(5981)

DUPONT, C. J., DALY and O'CONNELL, Js.

Argued April 12—decision released September 27, 1988

*Geoffrey Marion,* deputy assistant state's attorney, with whom, on the brief, were *Alan Reisner* and *James G. Clark,* assistant state's attorneys, and *Janine D'Angelo,* legal intern, for the appellant (state).

*James A. Wade,* with whom were *Raymond T. DeMeo* and, on the brief, *Sally S. King,* for the appellee (defendant).

DUPONT, C. J. The state appeals from the judgment rendered after the trial court's dismissal of the information against the defendant charging him with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. We find no error.

This case involves the following undisputed facts. On May 22, 1985, at approximately 9 p.m., the defendant was driving a car in an easterly direction on Airport Road in Hartford. While making a left turn into a restaurant driveway, the defendant's car collided with a motorcycle, operated by Scott Sementilli, which was traveling in a westerly direction on Airport Road. The defendant was arrested and charged with operating a motor vehicle while under the influence of liquor or drugs in violation of General Statutes § 14-227a.[1] The

---

[1] At the time of the incident, General Statutes (Rev. to 1985) § 14-227a provided in pertinent part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property while under the influence of intoxicating liquor or any drug or both."

following day, May 23, 1985, Sementilli died as a result of the injuries he sustained during the collision. The defendant was subsequently arrested and charged with manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-56b.[2] The defendant pleaded not guilty to both of these charges.

The state elected to sever the two counts and proceeded to trial on the manslaughter count only. The manslaughter count was then tried to the court. At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal. The trial court ruled that the state had failed to prove beyond a reasonable doubt that the defendant's alleged intoxication had caused the death of Sementilli and, accordingly, granted the defendant's motion for judgment of acquittal.

The state then sought to prosecute the defendant for operating a motor vehicle while under the influence of liquor. The defendant moved for a dismissal of the information charging him with operating while under the influence on the ground that the second prosecution was prohibited under the double jeopardy clauses of the federal and state constitutions. U.S. Const., amend V; Conn. Const., art. 1, § 8.

In opposition to the defendant's motion to dismiss, the state argued that the requirement in General Statutes § 53a-56b that the defendant's conduct be "in con-

[2] At the time of the incident, General Statutes (Rev. to 1985) § 53a-56b provided: "(a) A person is guilty of manslaughter in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both.

"(b) Manslaughter in the second degree with a motor vehicle while intoxicated is a class C felony and the court shall suspend the motor vehicle operator's license or nonresident operating privilege of any person found guilty under this section for one year."

sequence of his intoxication," was distinct from the requirement in General Statutes § 14-227a that the defendant be "under the influence" of liquor. The state contended that because it was possible to prove "intoxication" without having first proven that the defendant was "under the influence," § 53a-56b was not the "same offense" as § 14-227a for double jeopardy purposes. See generally *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

The trial court explicitly rejected the state's argument and, in a memorandum of decision, stated: "While it is possible to be under the influence of intoxicating alcohol while not being intoxicated, it is impossible to be intoxicated while not, at the same time, be[ing] under the influence of alcohol."[3] On that basis, the trial court concluded that the defendant's constitutional right against double jeopardy prevented the state from prosecuting him under § 14-227a and, accordingly, granted the defendant's motion to dismiss the information. The state's appeal followed.

---

[3] Under our penal code, "intoxication" is defined as "a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body." General Statutes § 53a-7. In *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349–50, 493 A.2d 184 (1985), our Supreme Court attempted to distinguish, in a meaningful way, between those qualities incidental to "intoxication" and those qualities incidental to "under the influence": "To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor. Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. . . . When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be 'dead-drunk.' It is enough if by the use of intoxicating liquor he is so affected in his act or conduct that the public or parties coming in contact with him can readily see and know this is so."

On appeal, the state has abandoned the argument that it had made to the trial court, namely, that it was possible to prove intoxication without having first proven that the defendant was under the influence. Rather, the sole claim raised by the state in its appeal is that the two offenses are not the same for double jeopardy purposes because (1) the crime of operating under the influence requires proof that the defendant operated a vehicle in one of the geographical locations specified in the statute, an element not required by § 53a-56b, and (2) the crime of manslaughter in the second degree with a motor vehicle while intoxicated requires proof of the death of another person, an element not required by § 14-227a.

The defendant argues that we should decline to review the claim on appeal on the ground that it was not specifically raised in the trial court. Before considering the merits of this claimed error, then, we must decide whether it is properly before us. We conclude that it is.

Practice Book § 4185 provides that the appellate courts "shall not be bound to consider a claim unless it was *distinctly raised* at the trial." (Emphasis added.) "The requirement that the claim be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' (Emphasis added.) *Woodruff* v. *Butler*, 75 Conn. 679, 682, 55 A. 167 (1903)." *State* v. *Carter*, 198 Conn. 386, 396, 503 A.2d 576 (1986).

Although the focus of the state's legal argument in support of its claim has shifted, there can be no real doubt that the claim made on appeal was the same claim made in the trial court, namely, that the trial court should not dismiss the information charging an offense of § 14-227a because under the *Blockburger* line of cases, the offenses set forth in §§ 14-227a and

53a-56b are not the same offense for double jeopardy purposes because each offense involves proof of an element that the other does not.[4] Accordingly, we will review the merits of the state's claim of error as refined by the state on appeal. See *State* v. *Dabkowski,* 199 Conn. 193, 198, 506 A.2d 118 (1986).

The fifth amendment to the United States constitution declares that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This amendment is fully applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution does not include a specific double jeopardy provision, our Supreme Court "has long recognized as a fun-

---

[4] In its memorandum of law in opposition to the defendant's motion to dismiss the information, the state averred: "The state concedes, arguendo, that the same incident underlies both statutory offenses charged against the defendant. Thus, '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger* v. *United States,* 284 U.S. 299, 304 [52 S. Ct. 180, 76 L. Ed. 306 (1932)]. As the defendant concedes the analysis 'precludes examination of the evidence.' *State* v. *McCall,* 187 Conn. 73, 90 [444 A.2d 896 (1982)], citing *Illinois* v. *Vitale,* 447 U.S. 410, 416 [100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980)]. Instead, *an examination of the elements of the two crimes is essential. State* v. *Goldson,* 178 Conn. 422, 424 [423 A.2d 114 (1979)], citing *Brown* v. *Ohio,* 432 U.S. 161, 166 [97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)].

"In the initial proceedings against the defendant, the State would have had to prove that (1) in the consequence of his intoxication, (2) while operating a motor vehicle, (3) the defendant caused the death of another person. In the instant case the state must prove the defendant (1) operated a motor vehicle on a public highway, (2) while under the influence of intoxicating substance." (Emphasis added.)

Our review of the state's memorandum in opposition makes clear that the claim raised therein was adequate to alert the trial court to the specific deficiency now claimed on appeal. *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986).

damental principle of common law that no one shall be put in jeopardy more than once for the same offense." *State* v. *Langley,* 156 Conn. 598, 600–601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969). The due process and personal liberty guarantees provided by article first, §§ 8 and 9, of the Connecticut constitution, therefore, have been held to encompass the protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

One of the protections flowing from the double jeopardy guarantee is that against a second prosecution for the same offense after acquittal; *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); or conviction. *Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980). "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U.S. 184, 187–88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957).

With reference to these interests, however, "the United States Supreme Court has consistently declined to hold that double jeopardy requires the prosecution 'to join at one *trial* all the charges against a defendant that grow out of a single criminal act, occurrence,

episode, or transaction.' (Emphasis added.) *Ashe* v. *Swenson,* [397 U.S. 436, 453–54, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)] (Brennan, J., concurring) . . . ." (Citation omitted.) *State* v. *Ellis,* 197 Conn. 436, 474, 497 A.2d 974 (1985).[5] Because not all offenses arising out of a single episode must be tried together, the state insists that the only test to be applied in this case is that set forth in *Blockburger* v. *United States,* supra. The state argues that application of the *Blockburger* test to this case yields the conclusion that an acquittal of the charge of manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-56b does not bar a subsequent prosecution for operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.

In *Blockburger* v. *United States,* supra, the United States Supreme Court considered whether several offenses charged in a single prosecution were sufficiently different to permit the imposition of multiple sentences without violating the double jeopardy clause. It established a test emphasizing a comparison of the elements of the offenses. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses *or only one, is whether each provision requires proof of a fact which the other does not.*" Id., 304. This test is a technical one and examines solely the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial. *Iannelli* v. *United States,* 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L.

---

[5] We are mindful that there is no compulsory joinder statute in this state. The issues of whether a second prosecution is barred by a compulsory joinder law or barred by the double jeopardy clause are separate, independent and distinct issues. See *Illinois* v. *Vitale,* 447 U.S. 410, 421 n.10, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980).

Ed. 2d 616 (1975) (*Blockburger* test is satisfied if each offense requires proof of a fact that the other does not, notwithstanding substantial overlap in proof offered); see also *State* v. *McCall,* 187 Conn. 73, 90, 444 A.2d 896 (1982); *State* v. *Flynn,* 14 Conn. App. 10, 18, 539 A.2d 1005 (1988).

In *Brown* v. *Ohio,* 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), the United States Supreme Court extended the *Blockburger* test to apply to successive prosecutions. In that case, the defendant had pleaded guilty to a charge of joyriding, and was later indicted for auto theft, which was defined as "joyriding with the intent permanently to deprive the owner of possession." Id., 167. Applying the *Blockburger* test, the court held that because the offense of joyriding required no proof beyond that necessary to convict the defendant of auto theft, the prosecution for theft was barred by the prior joyriding conviction. The *Brown* court reiterated that a proper application of the test depended on an analysis of the statutory elements of the offenses, rather than on the proofs actually offered at trial. Id., 166.

In applying the *Blockburger* test, it is clear that the offenses charged here do not constitute the "same" offense. Although the alleged violations arose out of the same act, each offense requires proof of a fact that the other does not. A conviction of manslaughter in the second degree with a motor vehicle while intoxicated requires proof of (1) operation of a motor vehicle (2) while intoxicated (3) which causes the death of another person. General Statutes § 53a-56b; see footnote 2, supra. A conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs, requires proof of (1) operation of a motor vehicle (2) on a public highway or on one of the other desig-

nated areas (3) while under the influence of intoxicating liquor or drugs. General Statutes § 14-227a; see footnote 1, supra.

While these two offenses share certain elements, each contains an element that the other does not. A conviction for operating a motor vehicle while under the influence of alcohol must be supported by proof that the defendant operated a motor vehicle on one of the locations specified in the statute; such a geographical element is not pertinent to a conviction for manslaughter with a motor vehicle while intoxicated. A conviction for manslaughter with a motor vehicle while intoxicated must be supported by proof that another person died as a result of the defendant's intoxication; such a death element is not pertinent to a conviction for operating a motor vehicle while under the influence of alcohol. For these reasons, the two offenses are not the same under the *Blockburger* test.

The defendant concedes that the two offenses are not the same under a *Blockburger* analysis. He maintains, however, that although he could have been convicted of both offenses charged and received consecutive sentences on both convictions in a single prosecution without violating the double jeopardy clause, the second prosecution is nonetheless barred in this case because the same evidence used in the first prosecution will be the only evidence offered to prove the commission of the offense charged in the second prosecution. In support of his argument, the defendant contends that the United States Supreme Court's application of double jeopardy principles in *Illinois* v. *Vitale,* supra, modified the application of the traditional *Blockburger* test to all postacquittal[6] or postconviction

---

[6] The United States Supreme Court has previously recognized that *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932), is not dispositive in successive prosecution cases where principles of collateral estoppel are applicable. *Ashe* v. *Swenson,* 397 U.S. 436,

prosecutions. We agree and hold that if the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not.

In *Illinois* v. *Vitale,* supra, the defendant struck and killed two children while driving an automobile. He was immediately charged with failing to reduce speed to avoid a collision. The defendant pleaded guilty and, after a trial to the court, he was convicted of that offense. The defendant was subsequently charged with

90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). In that case, the defendant allegedly robbed six poker players in a single incident. He was first prosecuted for robbing four of the gamblers. After acquittal, he was prosecuted for robbing the other two gamblers. The court held that principles of collateral estoppel barred the second trial. *Ashe* v. *Swenson,* supra, firmly established that the doctrine of collateral estoppel is embedded in the fifth amendment guarantee against double jeopardy. Collateral estoppel may constitute a defense to the second prosecution where the doctrine operates to preclude consideration of those issues which were determined at the first trial, even though the offenses involved are separate and distinct. In order for the doctrine to apply, however, the defendant bears the "burden of proving that the fact-finder [in the first trial acquitted him because it resolved in his favor the very issue that he seeks to foreclose from consideration in the second trial]." *United States* v. *Mespoulede,* 597 F.2d 329, 333 (2d Cir. 1979).

Although the defendant in the present case was acquitted of the manslaughter charge involved in the first prosecution, collateral estoppel principles do not apply here to bar the second prosecution for operating a motor vehicle while under the influence, because the acquittal at the first trial did not necessarily resolve the substantive issues of the offense charged at the second trial. The acquittal was based on the trial court's finding that the state failed to prove that the defendant's alleged intoxication caused the death of another person. The trial court did not appear to have resolved the issue of whether the defendant was intoxicated at the time of the fatal accident. As a result, a subsequent inquiry as to whether the defendant was operating a motor vehicle while under the influence of intoxicating liquor is not prohibited on collateral estoppel grounds.

involuntary manslaughter premised on the reckless operation of a motor vehicle, to which he defended on double jeopardy grounds.

The Supreme Court of Illinois dismissed the manslaughter charge, reasoning that the lesser offense of failing to reduce speed required no proof beyond that which was necessary for conviction of the greater offense and, therefore, the greater offense was, by definition, the same as the lesser offense included within it for purposes of the double jeopardy clause. *In re Vitale,* 71 Ill. 2d 229, 375 N.E.2d 87 (1978). In that decision, however, two justices dissented, arguing that each of the offenses charged required proof of a fact that the other did not. Id., 242. The dissent claimed that the traffic offense of failure to reduce speed need not involve death, whereas involuntary manslaughter need not involve an unlawful failure to reduce speed nor even the use of a motor vehicle.

On certiorari, the United States Supreme Court determined that the record did not contain sufficient information to answer the double jeopardy question under the *Blockburger* test in the context of Illinois law. The court, accordingly, vacated the judgment of the Illinois Supreme Court and remanded the case to that court for further proceedings because the United States Supreme Court was uncertain of the relationship between the two offenses under Illinois law, and did not know which reckless act or acts would be relied upon by the state to prove a violation of the manslaughter charge. *Illinois* v. *Vitale,* supra, 421.

That court discussed the three possibilities presented. First, the court stated that the double jeopardy clause would not prohibit a prosecution for involuntary manslaughter provided that a conviction for that offense would not always entail proof of a failure to reduce speed. "The point is that if manslaughter by automo-

bile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution." Id., 419. Second, the court clarified that "[i]f, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the 'same' under *Blockburger* and Vitale's trial on the latter charge would constitute double jeopardy under *Brown* v. *Ohio,* supra." Id., 419–20. Third, the court, in dictum, clouded the apparent applicability of the traditional *Blockburger* test, as previously set forth in the first and second possibilities, stating: "In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown*[7] and our later decision in *Harris* v. *Oklahoma,* [433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977)][8] . . . . By anal-

---

[7] In *Brown* v. *Ohio,* 432 U.S. 161, 169 n.7, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), the United States Supreme Court recognized that an exception to the double jeopardy bar "may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." This exception is not applicable in the present case.

[8] In *Harris* v. *Oklahoma,* 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977), the United States Supreme Court held that even though the Oklahoma felony murder statute did not on its face require proof of a robbery, a conviction for felony murder based on killing in the course of an armed robbery barred a subsequent prosecution for the robbery offense because the robbery was in fact the underlying felony, all elements of which had

ogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution." *Illinois* v. *Vitale,* supra, 420–21.

The decision in *Illinois* v. *Vitale,* supra, has spawned debate as to whether the double jeopardy clause mandates a modification of the traditional *Blockburger* test in successive prosecution cases so as to contemplate an examination of the actual proof at trial. The Connecticut appellate courts have not had an opportunity to decide this issue.[9]

Several courts have concluded that *Vitale* did not alter the traditional *Blockburger* test in successive prosecution cases, and continue to hold that the proper double jeopardy inquiry is whether each offense requires proof of an element not required by the other, without

---

been proved in the murder prosecution. The *Brown* court was mindful that the *Blockburger* test "is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown* v. *Ohio,* 432 U.S. 161, 166 n.6, 97 S. Ct. 221, 53 L. Ed. 2d 187 (1977).

[9] In its appellate brief and at oral argument before this court, the state averred that several "jurisdictions including Connecticut, have read *Vitale* as endorsing the *Blockburger* test as the only protection against successive prosecutions. See, e.g., *State* v. *Truppi,* 182 Conn. 449, 468, 438 A.2d 712 (1980); *State* v. *McCall,* 187 Conn. 73, 90, 444 A.2d 896 (1982) . . . ." The state has misstated the law on this controlling question. No Connecticut case, including the ones cited by the state, hold that *Blockburger* applies without modification in successive prosecution cases. In fact, each case cited by the state, and all Connecticut appellate court cases that have cited *Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), for the proposition that we do not examine the evidence at trial when applying the *Blockburger* test, involved single trial prosecutions. None of the cases revealed by our research on this issue involved successive prosecutions. All Connecticut cases cited by the state, therefore, are inapposite. There is no dispute that *Vitale* reaffirmed the application of the traditional *Blockburger* test in single prosecution cases.

resort to the evidence adduced at trial.[10] See, e.g., *United States* v. *Genser,* 710 F.2d 1426, 1429–31 (10th Cir. 1983); *United States* v. *Phillips,* 664 F.2d 971, 1005–1006 (5th Cir. 1981);[11] *United States* v. *Brooklier,* 637 F.2d 620, 623–24 (9th Cir. 1980), cert. denied, 450 U.S. 980, 101 S. Ct. 1514, 67 L. Ed. 2d 815 (1981); *State* v. *Seats,* 131 Ariz. 89, 638 P.2d 1335 (1981) (en banc); *Carlson* v. *State,* 405 So. 2d 173 (Fla. 1981); *People* v. *Jackson,* 118 Ill. 2d 179, 514 N.E.2d 983 (1987), overruling *People* v. *Zegart,* 83 Ill. 2d 440, 415 N.E.2d 341 (1980), cert. denied, 452 U.S. 948, 101 S. Ct. 3094, 69 L. Ed. 2d 961 (1981); *People* v. *Walker,* 109 Ill. 2d 484, 488 N.E.2d 529 (1985).

---

[10] We note that the Second Circuit Court of Appeals in *United States* v. *Clark,* 613 F.2d 391, 400 (2d Cir. 1979), afforded no further protection against successive prosecutions than *Ashe* v. *Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). *Clark,* however, was decided prior to the Supreme Court's decision in *Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980).

[11] Since *United States* v. *Phillips,* 664 F.2d 971 (5th Cir. 1981), the Fifth Circuit Court of Appeals has applied a modified *Blockburger* analysis to claims of double jeopardy in successive prosecution cases, although not advocating or adopting such an interpretation of *Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980). See, e.g., *United States* v. *Barrington,* 806 F.2d 529, 534 (5th Cir. 1986) (even when same evidence test applied, there was no double jeopardy violation); accord *Henry* v. *McFaul,* 791 F.2d 48, 51 (6th Cir. 1986) (no double jeopardy violation even when same evidence test applied); see also *Roberts* v. *Thigpen,* 693 F.2d 132 (N.D. Miss. 1982), discussed at footnote 12, infra; cf. *United States* v. *Gibson,* 820 F.2d 692, 698–99 (5th Cir. 1987) (although a mechanical application of the *Blockburger* rule dictated conclusion of distinct and separate offenses, application of the principle that " '[l]enity is a tool of statutory construction' " yielded conclusion that the defendant could be convicted of only one of the two offenses charged); *Davis* v. *Herring,* 800 F.2d 513, 518 (5th Cir. 1986) (although not deciding whether *Vitale* mandates inquiry into actual evidence adduced at trial, court held that *Blockburger* test is not the only standard for determining whether successive prosecutions will be barred and that successive prosecutions will be barred where the second prosecution requires the relitigation of factual issues already resolved by the first prosecution); accord *United States* v. *Patterson,* 782 F.2d 68, 73–75 (7th Cir. 1986) (doctrine of collateral estoppel applied), citing *Ashe* v. *Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).

These courts appear to apply an unmodified *Blockburger* analysis to successive prosecution cases for basically three reasons. The first reason is the statement in *Vitale* that *Blockburger* is "the principal test for determining whether two offenses are the same for the purposes of barring successive prosecutions." *Illinois* v. *Vitale,* supra, 416; see, e.g., *United States* v. *Brooklier,* supra, 624. The second reason is the following statement made by Justice Rehnquist, regarding the import of the dicta in *Vitale,* in a dissenting opinion to a case in which the United States Supreme Court declined to clarify *Vitale:* "But I am reasonably sure that the Court did not intend to transmute the traditional double jeopardy analysis from an either 'up or down' inquiry based on the evidence required to prove the statutory elements of a crime into a 'substantial claim' inquiry based on the evidence the State introduced at trial." *Thigpen* v. *Roberts,* 468 U.S. 27, 36, 104 S. Ct. 2916, 82 L. Ed. 2d 23 (1984) (Rehnquist, J., dissenting).[12] The third

---

[12] In *Thigpen* v. *Roberts,* 468 U.S. 27, 104 S. Ct. 2916, 82 L. Ed. 2d 23 (1984), the defendant was initially charged with reckless driving, driving while his license was revoked, driving on the wrong side of the road, and driving while intoxicated, all offenses arising from a fatal automobile accident. After the defendant was convicted of these four misdemeanors and while his appeal was pending, the defendant was indicted for manslaughter based on the same accident, and was convicted. The defendant brought a habeas corpus action in the federal District Court, which held that the manslaughter prosecution violated the double jeopardy clause and that substitution of a felony charge covering the same conduct for which the defendant had been convicted of the misdemeanors violated the due process clause of the fourteenth amendment.

The Fifth Circuit Court of Appeals affirmed, relying solely on the double jeopardy argument. *Roberts* v. *Thigpen,* 693 F.2d 132 (5th Cir. 1982). The United States Supreme Court affirmed on the due process ground, without deciding the double jeopardy issue. In dissent, Justice Rehnquist stated: "I believe that the Court is obligated to confront the State's contention that the Court of Appeals misapplied the Double Jeopardy Clause of the Fifth Amendment in this case. The Court being unwilling to undertake that obligation, I turn to it in dissent. . . .

"In reaching this conclusion, I believe that the Court of Appeals mistakenly relied upon a mere form of expression in the Court's opinion in *Illinois* v. *Vitale,* [447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980)], to depart

reason is the fact that three justices of the United States Supreme Court dissented to the denial of certiorari in a case where the Supreme Court of Illinois held that the double jeopardy clause had been violated because the state intended to use the same factual basis which supported the first conviction as the basis for the second conviction. *People* v. *Zegart,* supra, 445. The dissent emphasized that courts were required to look to the statutory elements of the first and second charges, not to the similarities of facts in the prosecution's proof. *Illinois* v. *Zegart,* 452 U.S. 948, 951, 101 S. Ct. 3094, 69 L. Ed. 2d 961 (1981). (Burger, C. J., dissenting from denial of certiorari); see, e.g., *People* v. *Jackson,* supra.

We find these reasons unpersuasive. First, although *Blockburger* is the "principal test" employed in analyz-

from all of our previous double jeopardy holdings in this area. The Court of Appeals apparently felt that the *Vitale* opinion changed governing double jeopardy law to permit a defendant to establish a substantial, and apparently dispositive, claim of double jeopardy merely by showing that the State actually relied upon the same evidence to prove both crimes. While there is one sentence in the Court's opinion in *Vitale* that supports this construction, I do not believe that construction is consistent with the opinion as a whole. Until the present case, the relevant question to be answered by any court is whether the evidence required to prove the statutory elements of crime is the same, not whether the evidence actually used at trial is the same.

"In *Vitale* the Supreme Court of Illinois had held that the Double Jeopardy Clause of the Fifth Amendment barred the prosecution of a defendant for manslaughter because the defendant had previously pleaded guilty to a charge of failing to reduce speed arising out of the same incident. This Court vacated the judgment of the Supreme Court of Illinois, saying: 'The point is that if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the "same" under the *Blockburger* test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution.' . . .

"It seems to me that this is about as clear a statement as there can be of the principle that the double jeopardy inquiry turns on the statutory elements of the two offenses in question, and not on the actual evidence that may be used by the State to convict in a particular case. Nonetheless, the Court went on in *Vitale* to distinguish *Harris* v. *Oklahoma,* 433 U.S. 682

ing any double jeopardy claim, it is not the only test. *Harris* v. *Oklahoma,* supra; *Ashe* v. *Swenson,* supra; *In re Nielsen,* 131 U.S. 176, 95 S. Ct. 672, 33 L. Ed. 118 (1889). Second, the significance of Justice Rehnquist's dissent in *Thigpen* v. *Roberts,* supra, as reflecting what a majority of the United States Supreme Court interprets *Vitale* as holding, is debatable. Third, the impact of the fact that three justices dissented to the denial of certiorari in *Zegart* is ameliorated by the impact of the denial itself. Although denials of certiorari by the United States Supreme Court have no precedential authority, the denial in *Zegart* certainly does not refute the argument that a majority of the court considers the *Blockburger* test as modified by inquiry into the repe-

[97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977)], and in so doing stated: 'By analogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution.' . . .

"I cannot say that this last expression did not afford the Court of Appeals some ground for the views which it expressed, nor can I say that I think it is entirely consistent with the first quotation from the *Vitale* opinion. But I am reasonably sure that the Court did not intend to transmute the traditional double jeopardy analysis from an either 'up or down' inquiry based on the evidence required to prove the statutory elements of a crime into a 'substantial claim' inquiry based on the evidence that the State introduced at trial. I think that there are ambiguities in *Illinois* v. *Vitale* which urgently need resolution by this Court, that the present case affords an ample opportunity to do this, and that the Court's failure to do it is an unexampled abdication of its responsibility.

"I would unambiguously reaffirm the statement in *Brown* v. *Ohio,* 432 U.S. 161 [97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)], relied upon in *Illinois* v. *Vitale,* supra, that ' "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." ' 432 U.S., at 166, quoting *Blockburger* v. *United States,* 284 U.S. 299, 304 [52 S. Ct. 180, 76 L. Ed. 306 (1932)]. . . . The actual evidence test which the Court of Appeals inferred from the single sentence in *Vitale* has never been applied to bar a second trial on grounds of double jeopardy." (Citations omitted.) *Thigpen* v. *Roberts,* supra, 34–39 (Rehnquist, J., dissenting).

tition of proof to be the proper double jeopardy approach in successive prosecution cases. See, e.g., *People* v. *Gartner,* 143 Ill. App. 3d 113, 491 N.E.2d 927 (1986), overruled by *People* v. *Jackson,* supra.

We, therefore, decline to follow the holdings set forth in the above cases, and adopt instead the rationale advanced by those courts that have interpreted *Vitale* to mean that in successive prosecution cases, two offenses might be considered the "same offense" for double jeopardy purposes, despite dissimilar statutory elements, where the same evidence or conduct proves both offenses. See, e.g., *Lee* v. *Probate Court,* 807 F.2d 512, 514 (6th Cir. 1986); *Flittie* v. *Sadem,* 775 F.2d 933, 938–39 (8th Cir. 1985); *Jordan* v. *Virginia,* 653 F.2d 870, 873 (4th Cir. 1980); *Pandelli* v. *United States,* 635 F.2d 533, 539 (6th Cir. 1980); *Jeffrey* v. *District Court,* 626 P.2d 631, 636 (Colo. 1981) (en banc); *Baker* v. *State,* 425 So. 2d 36, 40 (Fla. App. 1983) (Sharp, J., concurring); *State* v. *Ferrell,* 67 Md. App. 631, 508 A.2d 1023 (1986); *State* v. *Gardner,* 315 N.C. 444, 340 S.E.2d 701 (1986); *State* v. *DeLucca,* 108 N.J. 98, 527 A.2d 1355 (1987); *State* v. *Dively,* 92 N.J. 573, 458 A.2d 502 (1983); *State* v. *Carter,* 291 S.C. 385, 353 S.E.2d 875 (1987); *State* v. *Grampus,* 288 S.C. 395, 343 S.E.2d 26 (1986); *Ex parte Peterson,* 738 S.W.2d 688 (Tex. Crim. App. 1987); *May* v. *State,* 726 S.W.2d 573 (Tex. Crim. App. 1987) (en banc); c.f. *Wilson* v. *Zant,* 249 Ga. 373, 290 S.E.2d 442 (1982); *Haynes* v. *State,* 249 Ga. 119, 288 S.E.2d 185 (1982) (under state statute, where actual evidence used to establish one crime also establishes a different crime, the two crimes merge and a defendant can be convicted of only one of the crimes).

We are persuaded that the more accurate reading of *Illinois* v. *Vitale* is that it enhanced the protection afforded a defendant facing a second prosecution on proof of the same facts. Although *Vitale* does not suggest that it is necessarily a constitutional violation to

offer the same evidence at a second prosecution, it is clear that the court was concerned that the same evidence would be offered at retrial solely to prove conduct that was a necessary element of the offense of which the defendant had already been convicted. The court, therefore, viewed the issue as whether, in retrospect, the state had merely proven a lesser or greater included offense. See *Illinois* v. *Vitale*, supra, 420–21, citing *Harris* v. *Oklahoma*, supra; *Brown* v. *Ohio*, supra.

The reasons for applying a modified *Blockburger* standard in this case are compelling. Successive prosecution cases involve the core values protected by the double jeopardy clause. Successive prosecutions implicate a component of double jeopardy protection not implicated in single prosecutions of joined charges such as those involved in *Blockburger*. It protects not only against multiple punishments but also against multiple trials for the same offense. See *United States* v. *Wilson*, 420 U.S. 332, 343–44, 95 S. Ct. 1013, 43 L. Ed. 2d 232 (1975); *Green* v. *United States*, supra, 187–88; *United States* v. *Oppenheimer*, 242 U.S. 85, 37 S. Ct. 68, 61 L. Ed. 161 (1916). When the issue is purely one of multiple punishments, the right to be free from vexatious proceedings simply is not present. The interest of the defendant in single trial prosecutions is in not having more punishment imposed than that intended by the legislature. When the issue is one of multiple trials, the double jeopardy clause vindicates principles of finality and repose of former judgments and of fundamental fairness that simply are not involved in a single prosecution of joined charges. Basically, it insures that having once "run the gauntlet" of a criminal trial to either a judgment of conviction or acquittal, a person ought not to be required to run essentially the same gauntlet again.

This rationale leads to our conclusion that the test for determining whether the "same offense" is involved in successive prosecution cases should be one more protective of criminal defendants than is the relatively strict analytical *Blockburger* test that is decisive in single prosecution cases. We therefore adopt the actual evidence test in successive prosecution cases because it is a standard with more practical flexibility than the *Blockburger* same evidence test, as it directs a pragmatic inquiry into whether the evidence actually used to establish a conviction in the first prosecution is identical to that which will be used to establish a conviction in the second prosecution.

Applying the modified *Blockburger* actual evidence test to this case, we hold that the prosecution of the defendant for operating while under the influence is barred as violative of the double jeopardy clause. Given the record before us, it is clear that the state intends to relitigate the issue of whether the defendant was operating while under the influence of intoxicating liquor. The record clearly shows that the state will rely on and seek to prove in the second prosecution for operating under the influence the same act of operating while intoxicated on a public roadway necessary to prove the manslaughter charge in the first prosecution. Because the defendant has already been acquitted of conduct that is here shown to be a necessary element of the less serious crime for which he has been charged, his claim of double jeopardy is substantial under *Vitale*. In this case, furthermore, the defendant's substantial claim is also a successful one.[13]

---

[13] The state argued that even if the trial court interpreted *Vitale* as modifying the application of *Blockburger* in successive prosecution cases, because the defendant failed to object to the state's request to sever the charges, the defendant waived his double jeopardy rights. This argument was not made in this court but requires little discussion. First, the state cites no authority for such a proposition. Second, the state did not make any attempt to show that the mere failure to object to a severance of the charges for trial constitutes an implied waiver of the personal right to be immune from

Although the state may elect to sever for trial charges arising out of the same transaction or occurrence, it must do so in full cognizance of the enhanced double jeopardy protection afforded to the defendant as a result of forcing him to withstand more than one criminal prosecution.

There is no error.

In this opinion the other judges concurred.

double jeopardy. This case is not similar to a situation where a defendant has impliedly waived the guarantee against double jeopardy by proceeding to trial, verdict and judgment without raising a double jeopardy claim. See *State* v. *Price,* 208 Conn. 387, 390, 544 A.2d 184 (1988). Furthermore, this case does not present a situation where a defendant specifically requested the severance of charges. Accordingly, we conclude that the defendant in this case did not waive his constitutional right to be free from being placed in double jeopardy.