## STATE OF CONNECTICUT *v.* LEROY KELLY
## (8285)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued June 4—decision released September 4, 1990

*Kent Drager,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard F. Jacobson* and *Henry J. Lyons,* assistant state's attorneys, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of attempted escape in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-171 (a)[1] and of two counts of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1).[2] He and a codefendant, Clayman Whitaker, were tried together.

The defendant challenges (1) the trial court's supplemental instructions to the jury on the defense of renunciation pertaining to the charge of attempted escape from custody, (2) the admission of evidence of two pending charges of robbery in the first degree, (3) the examples of the meaning of proof beyond a reason-

---

[1] The relevant elements of attempted escape from custody are that the accused (1) is in lawful custody, (2) is charged with a felony, and (3) takes a substantial step in a course of conduct planned to result in escape from such custody. See General Statutes §§ 53a-49 (a) (2) and 53a-171.

[2] General Statutes § 53a-167c provides in pertinent part: "ASSAULT ON A PEACE OFFICER OR FIREMAN: CLASS C FELONY. (a) A person is guilty of assault of a peace officer or a fireman when, with intent to prevent a reasonably identifiable peace officer or fireman, as defined in section 53a-3, from performing his duty, (1) he causes physical injury to such peace officer or fireman."

able doubt used by the court in its preliminary instructions, (4) the prosecutor's allegedly improper remarks made in closing argument, (5) the trial court's denial of his motion for change of venue, and (6) the sufficiency of the evidence for his conviction of two counts of assault on a peace officer. We affirm the judgment of the trial court.

The facts in this case revolve around an incident that occurred in the holding area of a Fairfield county courthouse. James Dunlop, a special deputy sheriff, was assigned to that area to assist in the movement of prisoners between it and the courtrooms. The holding area consists of three cells, an office area, several security doors, a bay for the sheriffs' vans, and an elevator to the courtrooms. The defendant, along with other detainees, was being held in the center cell of the lockup area.

A detainee asked to go to the bathroom, and Dunlop opened the cell door to let him out. As Dunlop was trying to close the door, the defendant and the codefendant pushed up against the door, forcing the door to open and moving Dunlop back. The two defendants then exited the cell and began to punch Dunlop. Eventually, the defendant took security door keys from another sheriff who was in the area.

At this point, the defendant, the codefendant and another detainee locked the door behind them, leaving some sheriffs locked in the cell. They then tried to open various security doors, emptied drawers of an office desk, smashed a wire glass window of a door leading into the bay area, removed ceiling tiles, and attempted to pry a hinge from a door. While the defendant and the other detainees were trying to open the security doors, the elevator from the courtroom opened. Sheriff John Scanlon, who was wearing a blazer and a badge, was in the elevator and in the process of escort-

ing a prisoner from the courtroom to the holding area. Scanlon testified that he saw an unescorted detainee walk past and ordered the detainee up against the wall at which point Scanlon was attacked by the defendant. While placing Scanlon in a judo strangling hold, the defendant told another detainee to get Scanlon's keys. Scanlon managed to break the hold and retreat to the elevator where he or one of the other sheriffs pulled the alarm.

Once the elevator doors closed, the defendant and the two other detainees continued to try to open the security doors. A van pulled into the bay area, and a sheriff yelled that an escape was in progress. The three detainees then returned to the cell, but again left it, locked the door, and tried to open a security door. A sheriff observed, through a monitor, a police car pulling into the garage area. The defendant and the other detainees then went back into the cell, threw down the keys, and sat in a corner.

I

The defendant first contends that he was deprived of his fundamental constitutional right to present a renunciation defense. The defendant submitted a written request to charge on the defense of renunciation. The trial court charged the jury on the defense, and the defendant objected to it because it was based on law predating the penal code. In response to the defendant's objections, the court recharged the jury on the defense of renunciation. The defendant did not take an exception to the supplemental charge. The state argues that we should not review the issue because the defendant took no exception.

A matter encompassed by a written request to charge is reviewable even if the defendant failed to take exception. *State* v. *Reddick,* 15 Conn. App. 342, 351, 545 A.2d 1109, cert. denied, 209 Conn. 817, 551 A.2d 758 (1988);

*State* v. *Marshall,* 3 Conn. App. 126, 128, 485 A.2d 930 (1985), appeal dismissed, 199 Conn. 244, 506 A.2d 1035 (1986); see also Practice Book § 852.[3]

In reviewing a challenged portion of a jury instruction, it is well established that contested individual sections of the instruction are not to be judged in artificial isolation from the overall charge, but in the context of the charge as a whole. *State* v. *Quintana,* 209 Conn. 34, 47, 547 A.2d 534 (1988); *State* v. *Harris,* 172 Conn. 223, 226–27, 374 A.2d 203 (1977). "The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *State* v. *Corchado,* 188 Conn. 653, 661, 453 A.2d 427 (1982).

Before giving its supplemental charge, the court specifically asked the jurors to ignore its previous instruction on renunciation. It then charged that "[t]he defendants have asserted a defense to this charge of attempted escape from custody called abandonment and renunciation. The assertion of this defense reflects a claim that the facts proved are sufficient to show a voluntary and free abandonment of their purpose to escape. When such a defense is asserted the state has the burden of disproving that defense beyond a reasonable doubt. That is the case here. Our statutes provide that it is a defense to an attempt to commit a crime that the actor abandoned his effort to commit the crime or otherwise prevented its commission under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. However, such renunciation is not voluntary if it is motivated in [whole] or in part by circumstances not present or apparent at the inception of the actor's course of conduct which cir-

---

[3] Practice Book § 852 provides in relevant part: "The [appellate] court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered."

cumstances increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose. You must determine if there was an abandonment or renunciation in the first place and if so, whether it was voluntary." These instructions substantially echo General Statutes §§ 53a-49 and 53a-50.

The defendant argues that the court's supplemental instruction suggests a basis, not articulated in §§ 53a-49 (c) and 53a-50, for rejecting the defense of renunciation, namely, that there is a point in time beyond which it is too late to renounce an attempted crime.

There are two relevant statutory provisions defining the elements of renunciation. Section 53a-49 (c) provides in part: "When the actor's conduct would otherwise constitute an attempt . . . it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." Section 53a-50 elaborates on the voluntariness requirement as follows: "For purposes of this part, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct or to transfer the criminal effort to another but similar objective or victim."

The defendant objects only to one clause in one sentence of the entire five page supplemental charge. He cites the following language: *"While there is a point beyond which the jury may find it is too late to renounce,*

*that is clear, the jury can make that decision,* still an attempt under our statute as it is presently constituted does appear to be capable of renunciation and abandonment after the defendant actor has taken a substantial step toward the completion of the act with the necessary intent." (Emphasis added.) Although the words, "too late to renounce," as used in the first half of the sentence,[4] are capable of two interpretations, the court completed the sentence with a correct proposition of law. Even if the phrase were incorrect, one single misstatement in the context of an otherwise appropriate charge can be overlooked. *State* v. *Price,* 205 Conn. 616, 620–21, 534 A.2d 1196 (1987). The alleged misstatement of the law was subsequently corrected in the remainder of the supplemental charge. The court stated that "an attempt under our statute as it is presently constituted does appear to be capable of renunciation and abandonment after the defendant actor has taken a substantial step toward the completion of the act with the necessary intent."

When taken as a whole, the supplemental charge gave the jurors a clear understanding of the correct legal elements of the defense of renunciation and afforded them proper guidance for their determination of whether those elements were present. It is not reasonably possible that the jury was misled. *State* v. *Snook,* 210 Conn. 244, 275–76, 555 A.2d 390, cert.

---

[4] While the words, "too late to renounce," suggest that there is temporally a point beyond which one cannot renounce an attempt to commit a crime, the same words are also susceptible to another interpretation. These words could also mean that it is too late to renounce effectively an attempt to commit a crime if such a renouncement is induced by circumstances outside of the control of the actor that were not present at the inception of the actor's conduct, which increase the probability of detection or apprehension. If the words mean the latter, then they are perfectly consistent with the law. In any event, any ambiguity was clarified in the remainder of the sentence and the entire supplemental charge.

denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Bailey,* 209 Conn. 322, 338, 551 A.2d 1206 (1988); *State* v. *Quintana,* supra, 50.

## II

The defendant also challenges the trial court's evidentiary ruling that allowed evidence of two charges of robbery in the first degree pending to be introduced against the defendant. He claims that such evidence had no probative value and unfairly prejudiced the jury against him. The defendant contends that his claim was properly preserved for review. A careful examination of the record, however, reveals that this is not the case.

On cross-examination of a trial court clerk, evidence of the two charges of robbery in the first degree pending against the defendant was admitted without objection. The defendant did object, however, without giving any ground, when evidence of charges pending against his codefendant was introduced against the codefendant.

Absent exceptional circumstances, " 'appellate review of all issues, even constitutional issues, [is limited] to those on which the trial court has had an opportunity to rule.' " *State* v. *Rodriguez,* 10 Conn. App. 357, 358, 522 A.2d 1250 (1987), quoting *State* v. *Reddick,* 197 Conn. 115, 125, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). In order to preserve an evidentiary ruling for review, trial counsel must properly object and except. *State* v. *Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978); see Practice Book §§ 288 and 4185.[5]

---

[5] Practice Book § 288 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless

Because no objection was made, this court declines to review the claim. *State* v. *Tyler-Barcomb,* 197 Conn. 666, 674, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Martin,* 15 Conn. App. 58, 68, 544 A.2d 231 (1988), aff'd, 211 Conn. 389, 559 A.2d 707 (1989).

## III

The defendant next claims that the court's three examples of the meaning of proof beyond a reasonable doubt, given to the entire panel of prospective jurors before individual voir dire had commenced, diluted the state's burden of proof and thus constituted a violation of his right to a fair trial. Additionally, the defendant claims that the three examples "strongly suggest[ed] a shifting" of the burden of proof. He concedes that his claim was not properly preserved at trial, but seeks review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), or as plain error under Practice Book § 4185.

In a criminal case, the state must prove the defendant's guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 268 (1970); *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982). Where the alleged error implicates the defendant's right to be convicted by the proper burden of proof, this court will grant *Evans* review. See *State* v. *Findlay,* 198 Conn. 328, 345, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Torrice,* 20 Conn. App. 75, 92, 564 A.2d 330 (1989). Review under *Evans* is also available where the defendant has alleged a shifting of the

the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

Practice Book § 4185 provides in part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial."

burden of proof. See *State* v. *Williams,* 199 Conn. 30, 33–35, 505 A.2d 699 (1986); *State* v. *Amarillo,* 198 Conn. 285, 299 n.9, 503 A.2d 146 (1986).

Here, the claim is of constitutional magnitude and the record is adequate for review because the transcript preserved the instructions to the prospective jurors. The alleged constitutional violation is a claim of a dilution of the state's burden of proof or a shifting of that burden. The defendant's claim meets the first two requirements of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We now must determine whether the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial.

The defendant objects to three specific examples of proof beyond a reasonable doubt in the court's remarks.[6] These examples were given to a prospective panel of jurors, some of whom were the jurors subsequently sworn to hear the evidence in the case. The court later instructed the chosen jurors extensively, using appropriate and traditional language; see, e.g., *State* v. *Ryerson,* 201 Conn. 333, 342–43 n.2, 514 A.2d 337 (1986); on the burden of proof beyond a reasonable doubt.[7] The defendant does not contest these sub-

---

[6] The examples that were given by the court in its preliminary remarks to the entire prospective jury panel suggested that they could believe beyond a reasonable doubt that (1) he was a judge since he was on the bench wearing a black robe, (2) in the normal course of events, an oncoming car would stay to the right of the center line, and (3) the chairs provided by the judicial department were stable enough to hold them when they sat down.

[7] In its preliminary instructions to the jurors after they had been sworn to hear the evidence the court stated: "Ladies and gentlemen, as I have told you before, every defendant is presumed innocent until proven guilty. That presumption remains with the defendant during a trial unless and until that defendant is proven guilty beyond a reasonable doubt. I will be explaining that concept in my charge to you. The State has the burden of proving the defendant guilty beyond a reasonable doubt and a reasonable doubt means just that. A doubt for which you can assign a reason. A doubt that a reasonable person can reasonably entertain. It does not mean beyond a possible doubt. The defendant is not required in either case to prove his

sequent, more substantial instructions, which clearly defined proof beyond a reasonable doubt and emphasized that the state bears that burden of proof.

The challenged remarks were temporally unconnected to the court's final charge and were totally subsumed by the final charge. It is not even certain that all of the jurors were present when the remarks were made. The remarks, therefore, could not have influenced the jury in its deliberations, nor could they have deprived the defendant of a fair trial. The remarks were also insufficient to constitute plain error.

## IV

The defendant next claims that the prosecutor's remarks to the jurors in closing argument constituted prosecutorial misconduct. The prosecutor told the jury that the state had withdrawn a charge of attempted murder against the defendant because the prosecutor did not believe that the state could prove each element of that crime beyond a reasonable doubt. The defendant argues that this statement suggested that the state had met its burden of proof on the remaining charges. According to the defendant, this deprived him of his constitutional right to a fair trial. The defendant concedes that this claim was not properly preserved, but again seeks review under *State* v. *Evans,* supra.[8]

"Ordinarily, where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Lubesky,* 195 Conn. 475, 484, 488 A.2d 1239 (1985);

innocence or even produce any evidence although either defendant may do so if he wishes." At the end of all of the evidence, the judge exhaustively and correctly charged the jury on proof beyond a reasonable doubt.

[8] The defendant also seeks plain error review but has not supported this claim in his brief and we do not discuss it.

*State* v. *Malley,* 167 Conn. 379, 387, 355 A.2d 292 (1974). Where counsel fails to object or to request a curative charge 'we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. *State* v. *Lubesky,* supra; *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983).' *State* v. *Tyler-Barcomb,* [supra, 673]." *State* v. *Chace,* 199 Conn. 102, 108, 505 A.2d 712 (1986); *State* v. *Bell,* 13 Conn. App. 420, 426–27, 537 A.2d 496 (1988). "Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* supra, 69.

Although the defendant phrases his claim in constitutional terms, we fail to see, on the record before us, how the prosecutor's remarks could have deprived the defendant of a fair trial. We decline, therefore, to review the defendant's claim because it is not truly of constitutional magnitude and does not allege the violation of a fundamental right. *State* v. *Golding,* supra, 239; see *State* v. *Bell,* supra, 427.

V

The defendant next claims that he was deprived of his right to a fair or impartial trial because the trial court denied his motion for a change of venue. The defendant moved to transfer his prosecution to a courthouse other than the courthouse where the alleged crimes had occurred. The court denied his motion, and the defendant took an exception. The basis of the defendant's claim is that holding the trial in the Fairfield county courthouse would allow the jurors an unauthorized view of the scene of the alleged crime. See *Decko* v. *Wood,* 6 Conn. App. 95, 96, 503 A.2d 185, cert. denied, 199 Conn. 801, 505 A.2d 1249 (1986).

At trial, the defendant presented no evidence to support his motion for change of venue, but relied instead on representations made by defense counsel. A reviewing court, however, cannot rely on representations made by counsel as such representations are not "evidence." *State* v. *Carsetti,* 12 Conn. App. 375, 379, 530 A.2d 1095, cert. denied, 205 Conn. 809, 532 A.2d 77 (1987). "Although counsel for the defendant and the state may be content to rely on their own representations when pressing or posing motions in the trial court, they run the risk that, on appeal of an unfavorable ruling, they will have failed to establish a sufficient factual basis, supported by testimony or exhibits, to furnish us an adequate record to support their claims of error." Id. In this case, the risk has materialized.

Without exhibits or testimony to support his claim, the defendant has failed to provide us with a sufficient factual basis on which to review his claim. "In requesting a change of venue, a defendant bears the burden of showing that he could not otherwise receive a fair and impartial trial." *State* v. *Townsend,* 211 Conn. 215, 224, 558 A.2d 669 (1989). We conclude that there is no basis for us to review the trial court's ruling on the motion for change of venue.

## VI

Finally, the defendant alleges that there was insufficient evidence to support his convictions of assault of a peace officer pursuant to General Statutes § 53a-167c (a) (1). Specifically, he claims that there was insufficient evidence to prove the elements of § 53a-167c (a) (1) beyond a reasonable doubt. That section provides in part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, (1) he causes physical injury to such peace officer . . . ." The defendant contends that nei-

ther Dunlop nor Scanlon testified as to their duties. He also argues that there was no testimony that Dunlop, who admittedly was not wearing a sheriff's badge, was reasonably identifiable as a peace officer. Finally, he claims that the state failed to prove physical injury to Scanlon. The record, however, demonstrates that there was sufficient evidence of all of these elements.

"In reviewing a sufficiency of evidence claim on appeal the question presented is whether, viewing the evidence favorably to sustaining the verdict, the trier could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985); *State* v. *Haddad*, 189 Conn. 383, 387, 456 A.2d 316 (1983). Applying this standard, there is no question that the evidence established such proof beyond a reasonable doubt.

With respect to the defendant's first allegation, both Dunlop and Scanlon testified specifically as to their duties. Dunlop testified that his job was to assist in the movement of prisoners and Scanlon testified that he was to maintain order in the courtrooms and to transport prisoners from the courtrooms to the lockup area. From this testimony, the jury could have reasonably inferred that when Dunlop was locked in the cell, he could not assist in the movement of prisoners. Similarly, when Scanlon was exiting the elevator and was attacked by the defendant, the jury could have reasonably inferred that this prevented him from transporting a prisoner from the courtroom to a cell.

The defendant's second claim is also meritless since there was evidence that Dunlop was reasonably identifiable as a peace officer. Dunlop had keys to the cell in his possession and it was he who was asked by a

detainee to leave the cell in order to go to the bathroom. These facts were sufficient to establish that Dunlop was reasonably identifiable as a peace officer.

Finally, there was also adequate evidence presented on the element of physical injury suffered by Scanlon. Scanlon testified that he grew faint to the point where he was on the verge of unconsciousness because of the defendant's judo strangling hold. General Statutes § 53a-1 (3) defines "physical injury" as an "impairment of physical condition or pain." Growing faint to the verge of unconsciousness certainly qualifies as an impairment of physical condition. Therefore, the jurors could have reasonably inferred that Scanlon suffered physical injury as a result of the defendant's judo strangling hold.

The jury could have reasonably concluded that there was sufficient evidence to establish, beyond a reasonable doubt, the defendant's guilt for assault of peace officers, Dunlop and Scanlon.

The judgment is affirmed.

In this opinion the other judges concurred.