## STATE OF CONNECTICUT *v.* EDWARD GILCHRIST
## (8358)

Dupont, C. J., Foti and Lavery, Js.

Argued September 26, 1990—decision released April 19, 1991

*Suzanne Zitser,* assistant public defender, with whom, on the brief was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney.

DUPONT, C. J. The defendant appeals from the judgment of conviction of two counts of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), two counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (1), and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The crimes with which the defendant was charged involved four different victims.

The defendant contends that the convictions for attempted murder and assault in the second degree for one victim, and the convictions for attempted murder and assault in the first degree for another victim violate his right not to be put in double jeopardy under the constitution of the United States and his right to due process under the Connecticut constitution. He also claims that the jury was erroneously instructed on the

---

[1] The defendant was found not guilty of one count of felony murder, and not guilty of three counts of attempted robbery in the first degree.

components of self-defense, on the crime of attempted murder and on the definition of reasonable doubt.

I

The defendant's claim of violation of his right against double jeopardy is a narrow one. He asserts that if a defendant engages in conduct, which is a single act that results in a completed offense against one victim, he may only be convicted and punished for the one offense of the completed act, although he may properly be charged with both the attempted crime and the completed crime. Here, the attempted murder convictions and the assault convictions both arise, in the case of each victim, from a single gunshot. The defendant does not claim that the state cannot charge a defendant in a single trial with multiple crimes arising out of a single act, or contend that there cannot be multiple convictions of attempted murder and assault for a single act if there is more than one victim.

The defendant's double jeopardy claim was not properly preserved at trial, but the state concedes that we may consider it. See *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"The fifth amendment to the United States constitution declares that no person shall 'be subject for the same offense to be twice put in jeopardy of life and limb . . . .' This amendment is fully applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)." *State* v. *Lonergan,* 16 Conn. App. 358, 363, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). Among the guarantees provided by the double jeopardy clause is protection against multiple punishments for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct.

2072, 23 L. Ed. 2d 656 (1969); *State* v. *Lonergan,* supra, 213 Conn. 79. The defendant's argument invokes this protection.

The first step in determining whether several offenses charged in a single prosecution are sufficiently different to permit multiple punishments without violating the double jeopardy clause is to apply the test set forth in *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id.

The *Blockburger* test has already been applied to charges of attempted murder[2] and assault in the first degree.[3] *State* v. *Sharpe,* 195 Conn. 651, 655–56, 491 A.2d 345 (1985). That case concluded that attempted murder and assault in the first degree are not the same offense for double jeopardy purposes. The *Sharpe* court

[2] General Statutes § 53a-54a provides in part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

General Statutes § 53a-49 provides in part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose."

[3] General Statutes § 53a-59 provides in part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

reasoned that because conviction for attempted murder requires proof of intentional conduct constituting a substantial step toward intentionally causing the death of another person without proof of actual injury, whereas conviction for assault in the first degree requires proof that the defendant actually inflicted serious injury upon the victim without proof of an intent to cause death, the two offenses are not the same. This analysis of the elements of attempted murder and assault in the first degree may be extended to the defendant's other convictions for attempted murder and assault in the second degree. Assault in the second degree[4] and assault in the first degree require proof of actual injury, but no showing of an intent to cause death as is required by attempted murder. Each of the offenses of attempted murder and assault in the second degree, therefore, requires proof of a fact that the other does not.

The presumption that if a *Blockburger* analysis reveals that there are two crimes there may be separate punishments is not conclusive. *State* v. *Blackwell,* 20 Conn. App. 193, 197, 565 A.2d 549 (1989). The presumption is a rule of statutory construction that may be rebutted "by showing a clear legislative intent that the two statutes be treated as one for double jeopardy purposes." Id.; *State* v. *Greco,* 216 Conn. 282, 293, 579 A.2d 84 (1990); *State* v. *Fudge,* 20 Conn. App. 665, 669, 569 A.2d 1145, cert. denied, 214 Conn. 807, 573 A.2d 321 (1990).

The defendant concedes that the offense of attempted murder and assault in the first degree relating to one

---

[4] General Statutes § 53a-60 provides in part: "ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

victim, and the offense of attempted murder and assault in the second degree relating to another victim are separate offenses for purposes of *Blockburger,* rather than offenses standing in a greater-lesser relationship. He, thus, concedes that the offenses arose out of the same transaction and that each offense requires proof of an element that the other does not.

The defendant, nevertheless, argues that this court should modify the traditional application of the *Blockburger* analysis used in single prosecution cases in order to prohibit two convictions where the defendant has engaged in one single course of conduct. The defendant would define a single course of conduct as one incapable of division. He thus makes a distinction between "the same act or transaction" and a single course of conduct, claiming that the former may include two distinct courses of conduct or acts in a chain of related acts whereas the latter can include only one act. The defendant further argues that we ought to extend the reasoning of *State* v. *Lonergan,* supra, which concerns successive prosecutions, to single prosecution cases. In proffering this argument, the defendant asks this court to distinguish *State* v. *Sharpe,* supra, from this case because he views the facts of *Sharpe* as involving acts in a chain of related acts. The *Sharpe* court held that, although five or six shots were fired at one victim, a *Blockburger* analysis was required. In determining to conduct a *Blockburger* analysis, the court, however, is by implication deciding that there was only one act or transaction in spite of the multiplicity of shots.

The defendant claims that because the acts that gave rise to the convictions were here incapable of division, the legislature could not have intended to authorize punishment for both an attempted offense and a completed offense arising from such acts.

When two separate statutory offenses are charged, one not being a lesser included offense of the other, and cumulative punishment is authorized by the legislature, cumulative punishments may be imposed at the conclusion of a single trial regardless of whether the acts of the defendant are divisible, as long as they are part of the same transaction. *State* v. *Greco,* supra.

In *State* v. *Lonergan,* supra, 16 Conn. App. 363, we held, and the Supreme Court agreed, that "in successive prosecution cases, two offenses under the *Blockburger* test might be considered the 'same offense' for double jeopardy purposes, despite dissimilar statutory elements, where the same evidence or conduct proves both offenses." *Lonergan's* holding, however, is deeply rooted in the policies protecting defendants against multiple trials, and we decline to extend it to a case involving a single prosecution, even if it were true that the defendant's conduct as shown by the evidence might be viewed as a "single impulse," as characterized by the defendant. In single prosecution cases, the proper double jeopardy inquiry is whether each offense requires proof of an element not required by the other, without resort to the evidence adduced at trial. *Iannelli* v. *United States,* 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975). "When the issue is purely one of multiple punishments, the right to be free from vexatious proceedings is simply not present." *State* v. *Lonergan,* supra, 16 Conn. App. 377. The defendant has failed to persuade us that the legislature did not intend to impose two punishments for the two crimes involving both victims, and has failed to persuade us that this case is anything other than a garden-variety example of the application of *Blockburger.*

The defendant also claims that his dual convictions for attempted murder and assault in the first degree, and his dual convictions for attempted murder and assault in the second degree violate his right to due pro-

cess. Although the defendant makes this claim under article first, § 8, of the Connecticut constitution he cites only one federal case, *Whalen* v. *United States,* 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980), in support of his argument that the legislature did not intend to punish an attempt and the completed offense when both are accomplished by a single course of conduct on a single victim. *Whalen,* however, supports the finding of a due process violation only when the statutory provisions involved in the case fail the *Blockburger* test. Id., 691–93. Having determined that the statutes involved in this case pass the *Blockburger* test, we cannot find that the defendant's due process rights have been violated.

## II

The defendant claims that the trial court incorrectly instructed the jury on two elements of self-defense, thereby violating his state and federal constitutional rights to due process guaranteed by the constitution of Connecticut, article first, § 8, and the fifth and fourteenth amendments to the United States constitution[5] and to a fair trial guaranteed by the sixth amendment to the United States constitution. The trial court, the defendant argues, shifted the burden of proof to the defendant to prove that he was not the initial aggressor instead of requiring the state to prove, beyond a reasonable doubt, that the defendant was not justified in using deadly physical force to defend himself.[6] The

---

[5] We need consider only the defendant's federal due process claim because the defendant has not separately analyzed his federal and state due process claims. *State* v. *Ortiz,* 217 Conn. 648, 665 n.13, 588 A.2d 127 (1991).

[6] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes

defendant next asserts that the trial court impermissibly replaced the subjective-objective standard contemplated by General Statutes § 53a-19 (b) with a simple objective standard by failing to instruct the jury that the defendant himself must know that he can retreat safely, thereby avoiding the use of deadly physical force. The defendant concedes that his claims relating to the jury instructions on self-defense were not preserved at trial, yet he seeks review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), as refined by *State* v. *Golding,* supra.

The state contends that the defendant cannot prevail on his claims because they fail to satisfy all of the conditions of *State* v. *Golding,* supra, 239–40. We agree with the state.

A defendant charged with a crime has a right to present a defense incident to his right to due process of law. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Corchado,* 188

that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982). " 'This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. See General Statutes § 53a-12 (a).' " *State* v. *Corchado,* supra, 660–61, quoting *State* v. *Miller,* supra, 660–61.

The defendant's objections to the jury instructions on self-defense are of constitutional magnitude alleging a violation of a fundamental right, and the record is adequate for review. We conclude, however, that the defendant cannot prevail because the fourth condition of *State* v. *Golding,* supra, cannot be met.

It is well established that the defense of self-defense, when asserted, requires the state to disprove such a defense beyond a reasonable doubt. General Statutes § 53a-12 (a); *State* v. *Miller,* supra, 663; *State* v. *Holloway,* 11 Conn. App. 665, 670, 528 A.2d 1176 (1987). The defendant claims that the following language of the court's instructions shifted this burden and misled the jury to believe that the defendant bore the burden of proving that he was not the initial aggressor: "Now you have to determine the facts surrounding this case and whether or not justification can be made out based on these facts, the accused must be demonstrated to be either at his place of residence, I think, as well and place of work or he was not the initial aggressor. He must satisfy you." The defendant claims that the words, "he must satisfy you," shifted the burden of proving self-defense beyond a reasonable doubt to the defendant.

We must determine whether the alleged improper instruction when subjected to a harmless error analysis is harmless beyond a reasonable doubt. *State* v. *Golding,* supra.

Where an alleged improper instruction is of constitutional dimension, "the test is whether it is reasonably possible that the jury was misled." *State* v. *Quintana,* 209 Conn. 34, 50, 547 A.2d 534 (1988). It is axiomatic that in reviewing a challenged portion of a jury charge, we must consider the charge as a whole and its effect in guiding the jury to a proper verdict. Id., 51; *State* v. *Kelly,* 23 Conn. App. 160, 164, 580 A.2d 520 (1990). We do not judge a contested individual section of an instruction in artificial isolation from the overall charge. *State* v. *Quintana,* supra; *State* v. *Kelly,* supra.

Here, before the trial court used the allegedly improper words, it accurately and adequately informed the jurors that the state bore the burden of proving every element of the offenses charged beyond a reasonable doubt. Immediately after the challenged words, the trial court made it clear that the state must disprove the existence of self-defense. The court instructed as follows: "I wish to instruct you that it is not incumbent upon the defendant to affirmatively prove that he acted in self-defense in this case. The state has the burden of proving beyond a reasonable doubt the essential elements of the crimes. Since self-defense is inconsistent with guilt of these crimes where he interposes it, if any evidence has come into the case, whether by the state or the defendant, on which a reasonable doubt as to self-defense could be . . . predicated, *the state has the burden of negating self-defense as incident to its overall burden of proof beyond a reasonable doubt."* (Emphasis added.)

Although the challenged words perhaps suggested that the defendant bore the burden of demonstrating that he was not the initial aggressor, the court's instructions subsequent to the alleged misstatement eliminated any ambiguity as to which party bore the burden of proof with respect to self-defense. The charge, when taken as a whole, did not shift the burden of proof. It

is, thus, not reasonably possible that the jury was misled in this regard. *State* v. *Quintana,* supra.

We conclude, therefore, that the defendant cannot prevail on this claim because he has failed to demonstrate that the alleged constitutional violation misled the jury by shifting the burden of proof relating to self-defense from the state to the defendant.

We turn to the defendant's second claim relating to the jury instructions on self-defense. Pursuant to General Statutes § 53a-19, setting forth the defense of self-defense and defining the circumstances that justify the use of physical force, "a person may be justified in using physical force in his own defense if that person reasonably believes that physical force is being used or will imminently be used against him. That justification is unavailing, however, if the person '*knows* that he can avoid the necessity of using such force with complete safety (1) by retreating . . . .' (Emphasis added.) General Statutes § 53a-19 (b)." *State* v. *Quintana,* supra, 45–46. The statute requires both that a retreat in complete safety be available under the circumstances and that the defendant has actual knowledge of it. Id.

The trial court's instruction on the defendant's duty to retreat stated that "the defendant would not have been justified in standing his ground against the threatened attack to fend it off if he could, with complete safety, avoid the confrontation by retreating. However, in considering whether the defendant could have retreated in safety, the element of practicality must be considered."

If we assume that this language failed to convey to the jury that the defendant must have had actual knowledge of his ability to retreat, "[t]he question remaining for our consideration then is whether, on the whole record, the constitutional error [in failing to instruct adequately on the elements of a nonaffirmative defense]

was harmless beyond a reasonable doubt." *State* v. *Perez,* 10 Conn. App. 279, 290, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987). Phrased differently, we must determine whether it is "clear beyond a reasonable doubt, that the erroneous instruction did not contribute to the jury's verdict." Id.

Where the principal factual issues of a case are not classically dependent on the subtleties of the law of self-defense for their proof, an erroneous instruction on such subtleties is harmless beyond a reasonable doubt. See *State* v. *Quintana,* supra, 47–48. In this case, as in *Quintana,* the defendant's subjective knowledge of a safe escape was not a principal factual issue.

Here, the defendant testified that he had acted in self-defense when he was confronted by three individuals, one of whom had a gun, and when he was almost run over by a fourth individual who was driving a car. Two victims, on the other hand, testified that the shootings had occurred in the course of an attempted robbery of them by the defendant. A third victim testified that the defendant, who was fleeing from the scene of the attempted robberies, shot at the victim for no apparent reason. The defendant's initial statement to the police, which was introduced into evidence, bolstered the credibility of the victims because in that statement the defendant essentially admitted that he had intended to confront the victims because they had shot at him before. Although the defendant testified that he did not think that he could retreat, this was the only evidence on the issue of retreat that was introduced. In light of all of the evidence before the jury, it is evident that the principal factual issue was one of credibility, that is, whether the jury believed the defendant's version of self-defense or the victims' testimony that the attempted robberies and flight therefrom were the motivating forces behind the shootings. See id., 47. "The jury's verdict can fairly be read to indicate a

choice between these two inconsistent versions of the [shootings], a choice that accepted the version presented by [the victims] and rejected the self-defense version presented by [the defendant]." Id.

In the circumstances of this case, the trial court's erroneous instruction on the duty to retreat before deadly physical force could be used in self-defense did not contribute to the jury's verdict and was, therefore, harmless beyond a reasonable doubt.

The defendant also asserts that his claims constitute plain error that we should, in the interest of justice, notice. See Practice Book § 4185. "Plain error review is reserved for those ' "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." ' *State* v. *King*, 216 Conn. 585, 591, 589 A.2d 896 (1990)." *State* v. *Ortiz*, 217 Conn. 648, 659–60, 588 A.2d 127 (1991). The defendant's claims do not rise to this level.

### III

The defendant next claims that the trial court improperly instructed the jury under subdivision (1) of General Statutes § 53a-49 (a) relating to the crime of attempted murder when there was no evidence to support the charges, thereby depriving him of his federal and state constitutional rights to be convicted only upon proof beyond a reasonable doubt under the fifth, sixth and fourteenth amendments to the United States constitution and under the constitution of Connecticut, article first, § 8.[7]

The state first asserts that this claim is not preserved and that it, therefore, should not be reviewed. Alternatively, the state contends that the court's supplemen-

---

[7] See footnote 5, supra.

tal instructions on attempt cured any deficiency in the court's initial charge. The state further argues that if there was error, it was harmless beyond a reasonable doubt.

The defendant's claim was properly preserved because he submitted a written request to charge that encompassed the matter that he is now appealing. Practice Book § 852; *State* v. *Kelly*, supra, 163; *State* v. *Reddick*, 15 Conn. App. 342, 351, 545 A.2d 1109, cert. denied, 209 Conn. 819, 551 A.2d 758 (1988).[8]

As was discussed in the previous section of this decision, we must, looking at the charge as a whole, determine whether it was reasonably possible that the jury was misled. The question for us becomes whether the whole charge " ' "gave the jury a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present.". . .' " *State* v. *Cobb*, 199 Conn. 322, 326, 507 A.2d 457 (1986). We, thus, need to review the instructions given to the jury by the trial court in order to address the defendant's claim.

The court first instructed the jury that three elements had to be proven beyond a reasonable doubt before it could find the defendant guilty of an attempt to commit a crime rather than properly charging in the disjunctive with respect to subdivisions (1) and (2).[9] Both

---

[8] Practice Book § 852 provides in relevant part that "[t]he supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered."

The defendant requested that the trial court give the following charge on criminal attempt: "In order to convict a Defendant on an attempt to commit a crime, you must find beyond a reasonable doubt that the Defendant intended to commit the crime charged, and that he took some action which was a substantial step towards the commission of that crime."

[9] General Statutes § 53a-49 (a) establishes two separate definitions of criminal attempt to commit a crime. *State* v. *Bradley*, 12 Conn. App. 163,

parties objected to the court's interpretation of General Statutes § 53a-49 (a). The court then reinstructed the jurors on criminal attempt by reading all of § 53a-49 (a) to them.

The jury commenced its deliberation, and after deliberating for approximately one half of a day, it sent a note to the trial court requesting further instructions on the definition of attempted murder. In response to this note, the court again read all of § 53a-49 (a) to the jury but applied only subdivision (2), the substantial step method, to the facts of this case.

A trial court should not read an entire statute to a jury where the evidence supports only a portion of it. *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983); *State* v. *Newton,* 8 Conn. App. 528, 534, 513 A.2d 1261 (1986). The court in this case, however, after reading § 53a-49 (a) to the jury for the second and final time, made no mention of the "attendant circumstances" method of committing the crime of attempt. See *State* v. *Carter,* 189 Conn. 611, 628–29, 458 A.2d 369 (1983).

Specifically, the court instructed, in relevant part, that the jury must determine whether the defendant had the requisite mental intent and whether he "committ[ed] any act or omission which would have been a substantial step in the course of the conduct planned to culminate in the commission of either one or both crimes [two counts of attempted murder]." The court further instructed that "[i]t was what was intended . . . and what *steps* are you satisfied took place, if any

170, 529 A.2d 1343, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987). Section 53a-49 (a) (1) concerns the situation where one engages in conduct that would constitute the offense if the facts were as he perceived them whereas § 53a-49 (a) (2) involves carrying out in part some substantive portions of the proscribed conduct. Id. The defendant's requested instruction related to subdivision (2) of the statute.

and if any did, do they satisfy you beyond a reasonable doubt that the definition of an attempt to commit the offense has been reached." (Emphasis added.) These supplemental instructions were of particular importance because they were fresher in the jurors' minds when they resumed their deliberations. See *State* v. *Williams,* 199 Conn. 30, 41, 505 A.2d 699 (1986). By applying only the substantial conduct ground for committing criminal attempt under § 53a-49 (a) (2) to the facts of this case, the court eliminated the other statutory method for committing attempt under § 53a-49 (a) (1) from the jury's consideration. In sum, the trial court gave the jury an understanding of the elements of attempt as those elements applied here. We conclude, therefore, that it was not reasonably possible that the jury was misled.

## IV

The defendant next attacks jury instructions defining a reasonable doubt. The defendant claims that the court diluted or shifted the state's burden of proof when it instructed the jury that a reasonable doubt "is a doubt for which you may in your own individual mind, conscientiously . . . find and assign a reason to it." He argues that this instruction, by shifting or diluting the state's burden of proof, violated his federal and state constitutional rights to due process under the fifth and fourteenth amendments to the United States constitution and the constitution of Connecticut, article first, § 8, to be convicted only upon proof beyond a reasonable doubt.[10] The defendant concedes that his claim was not preserved at trial, but he seeks review under *State* v. *Golding,* supra. He also asserts that we may notice his claim under the doctrine of plain error. Practice Book § 4185.

---

[10] See footnote 5, supra.

The state maintains that the defendant cannot prevail on his claim relating to the court's instructions on a reasonable doubt because there was no clear deprivation of a fundamental constitutional right. *State* v. *Thomas,* 214 Conn. 118, 120, 570 A.2d 1123 (1990); see *State* v. *Golding,* supra, 240–41.

The defendant admits that jury instructions concerning a reasonable doubt similar to those to which he now objects have previously been approved by our Supreme Court. See, e.g., *State* v. *Thomas,* supra, 119; *State* v. *Leecan,* 198 Conn. 517, 538–39, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Findlay,* 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). The defendant, however, asserts that the instructions given here are dissimilar in a significant respect from those in previous cases because these instructions, unlike those in earlier cases, allegedly required the jurors to *articulate* a doubt.

The challenged definition of a reasonable doubt did not direct the jurors that each must articulate a doubt to the rest of the panel but merely stated that each juror must be satisfied in his or her own mind that there exists a reasonable doubt regardless of whether such doubt could be articulated. When viewed in the context of the entire charge, the instructions given by the trial court did not dilute or shift the state's burden of proof. *State* v. *Thomas,* supra. "It is clear after reading the court's charge in its entirety that the jury was adequately informed that the defendant was presumed innocent until the state proved otherwise and that it was the state's burden to prove him guilty beyond a reasonable doubt." Id., 119–20. Accordingly, we conclude that the defendant has not been clearly deprived of a fundamental constitutional right. Id., 120. See also *State* v. *Ireland,* 218 Conn. 447, 457, 590 A.2d 106 (1991). Further, the trial court's instruction on a rea-

sonable doubt did not result in a manifest injustice to the defendant and is not plain error. *State* v. *Thomas,* supra, 120–21.

The judgment is affirmed.

In this opinion the other judges concurred.