STATE OF CONNECTICUT *v.* MIRCELA NITA
(9820)

LANDAU, HEIMAN and CRETELLA, Js.

Argued January 8—decision released March 17, 1992

*D. Kirk Westfall,* special public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David Newman,* supervisory assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of General Statutes § 53a-167a[1] and breach of the peace in violation of Gen-

---

[1] General Statutes § 53a-167a provides in pertinent part: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer . . . in the performance of his duties."

eral Statutes § 53a-181 (a) (6).[2] The defendant was found not guilty of assault of a peace officer in violation of General Statutes § 53a-167c. She claims that the trial court improperly (1) refused to instruct the jury, as requested, on her first amendment right to free speech, (2) failed to instruct the jury that intent is an element of interfering with an officer, (3) imposed multiple punishments for her convictions of both interfering with an officer and breach of the peace and (4) denied her motion for a bill of particulars. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. July 2, 1989, was one of the busiest days of the summer at Hammonasset Beach state park, and the park roads had heavy motor vehicle, bicycle and pedestrian traffic. In an attempt to slow some of the park traffic, officers of the department of environmental protection conducted a radar operation on one of the park's roads. An officer operated a radar unit from a patrol vehicle on the median divider, and radioed descriptions of the vehicles to be stopped for exceeding the twenty mile per hour speed limit to officers stationed about one quarter of a mile ahead.

At about 5:30 p.m., the defendant was a passenger in a yellow sports car driven by her former husband, Constantin Nita. After the radar operator clocked the vehicle at forty miles per hour, he radioed its speed and description to the officers ahead. After receiving the call, Officer Kristen Morehouse stepped into the roadway and directed the car to pull onto the shoulder of the road. Morehouse then approached the vehicle and

---

[2] General Statutes § 53a-181 provides in pertinent part: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (6) creates a public, hazardous or physically offensive condition by any act which he is not licensed or privileged to do."

asked Constantin Nita for his driver's license, registration and insurance card.

Constantin Nita exited his car and retrieved his license from the back of it. When Officer Sean Dautrich saw Constantin Nita exit the vehicle, he moved to assist Morehouse. The defendant, holding the vehicle's registration certificate, exited the passenger side of the car and walked around to the driver's side, which was adjacent to the roadway. When Dautrich requested that she give him the certificate of registration, she refused to do so, and instead told the officers that they were not real police officers and that stopping the vehicle was ridiculous because other cars traveling faster were not stopped. When Morehouse explained that a radar unit set up down the road had indicated that the car had exceeded the speed limit, the defendant angrily declared that she would not show the registration to Dautrich unless she was shown proof of the radar reading. Dautrich then requested that the defendant get back into the car for her own safety and that of the officers. Dautrich also told her that there was no reason for her to be outside the car because the stop involved only the vehicle's driver.

The defendant refused to get into the car and began shouting at the officers. She then obtained a pen from the vehicle's interior and demanded the officers' names and badge numbers, ostensibly for the purpose of filing a complaint against them. The defendant positioned her face inches from Dautrich's while jumping up and down and screaming at him. Next, she held the pen in a knife grip and jabbed it at him, forcing him to retreat into the path of moving traffic. The defendant screamed profanities at the officers throughout the altercation. After observing the defendant force Dautrich into the road, Officer Brian Heavren proceeded into the road's right lane and directed traffic into the left lane. At Heavren's request, Officer Christopher Brindisi posi-

tioned himself about 100 yards from the altercation and blocked the right lane of traffic in an attempt to protect his fellow officers.

Dautrich and Morehouse attempted to place the defendant under arrest. She continued to scream obscenities at them, kicked at them in an attempt to prevent them from restraining her, kicked Dautrich in the groin, attempted to bite Officer Christopher McWilliams, another officer assisting in the arrest, and refused to enter the officers' cruiser. Eventually, the officers handcuffed her, picked her up and placed her in the cruiser. The incident, from the initial stop to the defendant's arrest, lasted somewhere between ten and fifteen minutes, and attracted a crowd consisting of between twenty and fifty persons.

The defendant was sentenced, after a jury trial, to one year incarceration, execution suspended after thirty days, for interfering with an officer and received a $250 fine for breach of peace.

I

The defendant first asserts that the trial court improperly refused to charge the jury, as requested,[3]

---

[3] The defendant filed a request to charge asking the trial court to instruct the jury as follows with respect to the breach of peace charge: "[W]ords, however inflammatory they may be, cannot be punished unless, by their very utterance they inflict injury or tend to incite an immediate breach of peace by others. In order to convict the defendant you must find sufficient evidence to prove beyond a reasonable doubt that Ms. Nita's language was sufficiently inflammatory to arouse retaliatory violence by a police officer. However, policemen are held to a higher standard of behavior than ordinary citizens. They are under a duty to remain calm and controlled under circumstances that might provoke violent reactions in others. Where such words simply question a police officer's conduct, or seek to ascertain officer's names and/or badge numbers, they are protected under our First Amendment constitutional guarantee of free speech. In this respect, Ms. Nita's conduct would have been privileged, or licensed, if her intent was solely to ascertain the officer's names and/or badge numbers."

The defendant further requested the trial court to instruct the jury: "Ms. Nita claims that she was arrested and assaulted by Mr. Dautrich and Ms.

regarding the extent to which the first amendment to the United States constitution prohibited the state from convicting her of the offenses charged. We disagree.

We first examine the extent to which the first amendment restricts the scope of the interfering with an officer statute. On its face, the statute proscribes obstructing, resisting, hindering or endangering any peace officer in the performance of his duties. General Statutes § 53a-167a. Intent to cause the prohibited result is an essential element of the offense. *State* v. *Peruta,* 24 Conn. App. 598, 603, 591 A.2d 140, cert. denied, 219 Conn. 912, 593 A.2d 137 (1991); *State* v. *Flynn,* 14 Conn. App. 10, 18, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). While the statute prohibits some acts of verbal resistance as well as physical resistance, "[t]he statute's requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action." *State* v. *Williams,* 205 Conn. 456, 471–72, 534 A.2d 230 (1987).

The defendant does not dispute the sufficiency of the state's evidence to convict her of interfering with an officer. Rather, she claims that the trial court's failure to instruct the jury regarding the extent to which

Morehouse when she questioned the officers about their names and badge numbers, and that Dautrich's actions were taken in retaliation for her exercising her right to free speech, as guaranteed by the First Amendment to the United States Constitution. It is not a crime for a citizen to question the authority of a police officer. Every citizen has a right to criticize public officials, and police officers are public officials."

The defendant also requested the trial court to instruct the jury concerning the charge of interfering with an officer: "Mere disagreeable conduct, disagreement or arguing with, or yelling at police officers, is not interfering with an officer. The mere fact that the police officers may have been annoyed by that conduct or disagreement, moreover, still is not sufficient to justify a conviction of the defendant for interfering with the officers."

the first amendment protects her activities created a reasonable possibility that the jury convicted her on the basis of protected speech. "A theory of defense instruction is appropriate, upon proper request; *State* v. *Preyer,* 198 Conn. 190, 199, 502 A.2d 858 (1985); only when evidence supporting a 'legally recognized defense' is placed before the jury. *State* v. *Cassino,* 188 Conn. 237, 243, 449 A.2d 154 (1982); *State* v. *Rosado,* [178 Conn. 704, 707, 425 A.2d 108 (1979)]; see *State* v. *Harris,* 189 Conn. 268, 274, 455 A.2d 342 (1983)." *State* v. *Silveira,* 198 Conn. 454, 462, 503 A.2d 599 (1986). "A general 'claim of innocence or a denial of participation in the crime charged is not a legally recognized defense and does not entitle a defendant to a theory of defense charge.' [*State* v. *Rosado,* supra.]" *State* v. *Silveira,* supra. While couched in the language of the first amendment, the requests to charge constituted nothing more than a proposed instruction that the defendant did not possess the requisite intent if she merely questioned the officer's authority or protested his action. See *State* v. *Williams,* supra. Because the first amendment defense represented an intrinsically factual claim that she did not commit an element of the offense, the trial court was not required to deliver a separate jury instruction on it. See *State* v. *Silveira,* supra.

The defendant also claims that the trial court improperly refused to instruct the jury, as requested, regarding the extent to which the first amendment prohibited the state from convicting her of breach of the peace. A request to charge must be adapted to the evidence in the case or to the issues before the jury. *State* v. *Maturo,* 188 Conn. 591, 600, 452 A.2d 642 (1982); *State* v. *Timmons,* 7 Conn. App. 457, 467, 509 A.2d 64 (1986) appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987). A trial court properly may refuse to deliver a requested instruction that raises an issue not supported by the

pleadings or the evidence, particularly where such a charge might influence the jury unfairly. See *State* v. *Timmons,* supra.

The defendant claims that she was entitled to the requested instruction because the first amendment prohibited her conviction of breach of peace on the basis of merely expressive activity. This instruction was unnecessary because the relevant statutory language, the charging documents and the trial court's instructions stated that the defendant was charged with breach of peace based on her conduct, not her speech. General Statutes § 53a-181 (a) (6), the statutory subdivision that the defendant was charged with violating, proscribes certain *acts* that create a "public, hazardous or physically offensive condition." Compare General Statutes § 53a-181 (a) (5) (explicitly prohibiting speech). The long form information substantially mirrors the statutory language, and accuses the defendant of violating the statute by performing an "act" that forced peace officers into a lane of traffic and required other officers to stop traffic. Finally, the trial court's instructions on breach of the peace repeatedly referred to prohibited acts and conduct, not speech. Thus, the charging documents and the trial court's instructions uniformly stated that the defendant was charged with breach of the peace based on her conduct, not her speech. The fact that she may have uttered protected speech during the course of prohibited conduct is irrelevant. As a result, the defendant's requested instruction on the first amendment was not adapted to the evidence or the issues before the jury. The mere invocation of the first amendment, unsupported by a factual predicate, does not entitle a defendant to a jury instruction on the scope of protected speech. The trial court properly refused to deliver this instruction.

## II

The defendant next asserts that the trial court failed to instruct the jury that intent is an essential element of interfering with an officer. We disagree.

The trial court read the interfering with an officer statute to the jurors.[4] It then instructed them as follows: "There are two essential elements to the crime of interfering with an officer. First, that the defendant obstructed, resisted, hindered or endangered a peace officer; and, secondly, that the conduct of the defendant occurred while the peace officer was in the performance of her duty . . . . Now, from the evidence you have heard, you should consider whether the defendant obstructed, hindered or endangered a peace officer; *and in addition, you must consider whether this defendant intended to interfere with the performance of the officer's duty. Accidental or inadvertent interference is not enough . . . .*" In its instructions pertaining to the assault of a peace officer charge, the trial court read the statutory definition of "intentionally"; see General Statutes § 53a-3 (11);[5] to the jurors and told them "I believe intent may be referred to in the other two charges, and I will tell you to keep that in mind." Although the defendant acknowledges that the trial court instructed the jury that it could not find the defendant guilty unless she possessed the requisite intent, she claims that the trial court's failure to state specifically that intent was an essential element of the crime constituted reversible error.

Although it does not appear in statutory language, intent is an element of the crime of interfering with

---

[4] See footnote 1, supra.

[5] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

an officer. *State* v. *Peruta,* supra; *State* v. *Flynn,* supra. "It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged." *State* v. *Williamson,* 206 Conn. 685, 708, 539 A.2d 561 (1988). "When reviewing a claim of error involving jury instructions that implicates a defendant's constitutional right, ' "[t]he applicable test requires the state to prove beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled." ' *State* v. *Townsend,* 206 Conn. 621, 626, 539 A.2d 114 (1988), quoting *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985)." *State* v. *Wilson,* 17 Conn. App. 104, 106, 550 A.2d 643, cert. denied, 210 Conn. 803, 553 A.2d 616 (1988).

We rejected an identical claim—that the trial court must state specifically that intent is one of the three elements of interfering with an officer—in *State* v. *Wilson,* supra. While it would have been preferable to list intent as one of the three elements of interfering with an officer, we conclude, as we did in *State* v. *Wilson,* supra, 108, that the state has proven beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled to believe that intent was not an element of the crime. See *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982).

### III

The defendant asserts that her sentence for interfering with an officer and fine for breach of the peace violated the constitutional prohibition against double jeopardy.[6] We disagree.

---

[6] In her statement of issues, the defendant claims that the trial court's actions also constituted a violation of rights guaranteed to her by article first, §§ 4 and 8, of the Connecticut constitution. The defendant does not brief her state constitutional claim. Accordingly, this claim is abandoned,

" 'The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Lonergan,* 213 Conn. 74, 78, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Anderson,* 212 Conn. 31, 35, 561 A.2d 897 (1989); *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824 , 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).' *State* v. *Greco,* 216 Conn. 282, 289–90, 579 A.2d 84 (1990)." *State* v. *Fernandez,* 27 Conn. App. 73, 94–95, 604 A.2d 1308 (1992).

In deciding whether the crimes arose out the same act or transaction, we analyze the language of the information. *State* v. *Flynn,* supra, 16. The information accused the defendant of interfering with an officer "in violation of 53a-167a and charge[d] that at the Town of Madison, on or about the 2nd of July, 1989, the said Mircela Nita interfered with Officer Kristy Morehouse and Officer Sean Dautrich in that she resisted, hindered and endangered both peace officers and that her conduct occurred while both officers were acting in the performance of their duties, in violation of the statute." The information further accused the defendant of breach of the peace "in violation of 53a-181 (a) (6) and charge[d] that at the Town of Madison on or about

and we will not review it. See *State* v. *Anthony,* 24 Conn. App. 195, 210, 588 A.2d 214, cert. dismissed, 218 Conn. 911, 591 A.2d 813, cert. denied, U.S. , 112 S. Ct. 312, 116 L. Ed. 2d 254 (1991).

July 2, 1990, at approximately 6:00 p.m., the said Mircela Nita with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, she created a public, hazardous, and physically offensive condition by an act which she was not licensed or privileged to do while on the outbound lane of traffic on Beach Road at Hammonasset Beach State Park, in Madison. That as a result of her behavior, Peace Officers Brian Heavren and Chris Brindisi had to stop traffic as other officers were being forced into a lane of traffic as a result of the confrontation with, and the behavior of Mircela Nita in violation of the statute." Although the information states that the two charges were based on acts performed on or about July 2, 1990, in Madison, it does not state whether both acts occurred in Hammonasset Beach state park at approximately 6 p.m. The information is also unclear as to whether the alleged acts were directed against different peace officers. Indeed, both charges could fairly be construed to rest on an accusation that the defendant forced Morehouse and Dautrich into the road, requiring that Heavren and Brindisi stop traffic. Because the information charges the defendant with violating the two statutes by performing acts in the same town on the same day, but fails to state the nature of the alleged acts with sufficient particularity to determine whether they are in fact the same act or transaction, we construe the ambiguity in favor of the defendant and conclude that the charges arise out of the same act or transaction for double jeopardy purposes. See *State* v. *Goldson,* 178 Conn. 422, 425, 423 A.2d 114 (1979); *State* v. *Flynn,* supra, 17.

Our next inquiry is whether the two offenses are the same for double jeopardy purposes. " ' "The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct.

180, 76 L. Ed. 306 (1932)." *State* v. *Chicano,* 216 Conn. 699, 706–707, 584 A.2d 425 (1990). Under the *Blockburger* test, "a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other." *State* v. *Vass,* 191 Conn. 604, 615, 469 A.2d 767 (1983); see *State* v. *Greco,* [supra, 291]. We determine whether each crime contains an element not found in the other by examining only the relevant statute, the information and the bill of particulars, and not the evidence presented at trial. *State* v. *Greco,* supra.' *State* v. *Tweedy,* 219 Conn. 489, 495, 594 A.2d 906 (1991); see also *State* v. *Mezrioui,* 26 Conn. App. 395, 403, 602 A.2d 29 (1992)." *State* v. *Fernandez,* supra, 95.

The crimes of interfering with an officer and breach of peace, as charged, each contain an element that the other does not. In order to convict the defendant of interfering with an officer, the state was required to prove that she hindered Morehouse and Dautrich in the performance of their duties. It was not required to prove that she created a public condition. In order to prove the defendant guilty of breach of peace as charged, the state was required to show that she created a public and physically offensive condition, but was not required to show that she hindered officers Dautrich and Morehouse in the performance of their duties. As a result, the charges are not the same for double jeopardy purposes. See id.

"Our analysis does not end here, however. The *Blockburger* test is a rule of statutory construction rather than a conclusive presumption. *State* v. *Russell,* 25 Conn. App. 243, 251, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991). As such, a presumption under *Blockburger* that there are two crimes which may warrant two punishments may be rebutted by showing a clear legislative intent that the two statutes be treated as one for double jeopardy purposes. *State*

v. *Russell,* supra; see *State* v. *Gilchrist,* 24 Conn. App. 624, 628, 591 A.2d 131 (1991). The language, structure and legislative history of a statute can provide evidence of this intent. *State* v. *Greco,* supra, 293." (Internal quotation marks omitted.) *State* v. *Fernandez,* supra. The defendant has provided us with no analysis of the legislature's intent and has failed to rebut the *Blockburger* presumption.

The defendant's punishments for interfering with an officer and breach of peace did not violate the constitutional prohibition on multiple punishments for the same offense.

## IV

The defendant next claims that the trial court's denial of her motion for a bill of particulars, coupled with the lack of specificity contained in the state's information, deprived her of her right to reasonable notice of the charges against her in violation of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[7] She posits that defense counsel was unable to prepare a defense adequately and to avoid prejudicial surprise. She also claims that because of the information's lack of specificity, she is unable to plead her convictions in bar to a subsequent prosecution based on the same offense. We disagree.

" 'The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to

---

[7] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

The defendant has failed to provide any independent analysis of her claim under the Connecticut constitution. Thus, we will treat this claim under only the federal constitution analysis. *State* v. *Pinnock,* 220 Conn. 765, 776 n.3, 601 A.2d 521 (1991); *State* v. *McMurray,* 217 Conn. 243, 248 n.6, 585 A.2d 677 (1991).

be informed of the nature and cause of the charges against [her] with sufficient precision to enable [her] to meet them at trial.' *State* v. *Laracuente,* 205 Conn. 515, 518, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). ' "When the state's pleadings have 'informed the defendant of the charge against [her] with sufficient precision to enable [her] to prepare [her] defense and to avoid prejudicial surprise, and were definite enough to enable [her] to plead [her] acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty.' *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979)." *State* v. *Vincent,* 194 Conn. 198, 205, 479 A.2d 237 (1984).' *State* v. *Morrill,* 197 Conn. 507, 551, 498 A.2d 76 (1985); *State* v. *Killenger,* 193 Conn. 48, 55, 475 A.2d 276 (1984) . . . ." *State* v. *Spigarolo,* 210 Conn. 359, 381–82, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). The constitutional mandate is fulfilled where the state has set forth the statutory designation of the crime, leaving to the defendant the burden of moving for a bill of particulars where she wishes greater detail regarding the manner in which she committed it. *State* v. *Vincent,* supra; *State* v. *Spigarolo,* supra, 382; see Practice Book §§ 618 and 830 through 833.

The trial court has broad discretion in ruling on a motion for a bill of particulars. *State* v. *Flanders,* 214 Conn. 493, 503, 572 A.2d 983, cert. denied, U.S. , 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990). Its ruling will be overturned " 'only upon a clear showing of prejudice to the defendant. *State* v. *Brown,* 173 Conn. 254, 257, 377 A.2d 268 (1977).' *State* v. *Frazier,* [194 Conn. 233, 236, 478 A.2d 1013 (1984)]. 'To establish prejudice, the defendant must show that the information was necessary to [her] defense, and not merely that the preparation of [her] defense was made more

burdensome or difficult by the failure to provide the information.' A. Spinella, Connecticut Criminal Procedure, p. 438; *State* v. *Stepney,* 191 Conn. 233, 242, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984)." *State* v. *Spigarolo,* supra, 385. The defendant bears the burden of establishing why additional particulars were necessary to the proper preparation of her defense. *State* v. *DiBella,* 157 Conn. 330, 339, 254 A.2d 477 (1968); *State* v. *Curtis,* 146 Conn. 365, 367, 151 A.2d 336 (1959).

The defendant has failed to persuade us that she was prejudiced by the trial court's denial of her motion for a bill of particulars as to the interfering with an officer charge. The information stated that the acts that formed the bases for both the assault of a peace officer and breach of the peace charges occurred at approximately 6 p.m. in Madison. It further specified that the breach of the peace occurred on Beach Road in Hammonasset Beach state park. The information further stated that both the assault of a peace officer and the interfering with an officer charges were based on acts directed against Dautrich. The information, read as a whole, clearly notified the defendant of the alleged incident that formed the basis of the interfering with an officer charge. See *State* v. *Spigarolo,* supra, 384. The fact that the information specified neither the precise act that formed the basis for liability nor whether the charge was based on prearrest or postarrest conduct does not constitute an ambiguity of such magnitude as to deprive her of the constitutionally required notice. See id., 383–84.

Further, the defendant's defense to all of the charges was that she did no more than peaceably request Dautrich's name and badge number. Thus, the issue at trial was the witness' credibility. The defendant

cannot show that she clearly was prejudiced by the trial court's denial of her motion for a bill of particulars. See *State* v. *Flanders,* supra; *State* v. *DiBella,* supra; *State* v. *Curtis,* supra, 368.

The defendant's claim that the information failed to provide her with the constitutionally required notice regarding the alleged act that formed the basis of the breach of the peace charge is wholly without merit. The information explicitly stated the date, time and place, including the street in Hammonasset Beach state park, on which the alleged act occurred. It further stated that she forced peace officers into the road, requiring Heavren and Brindisi to stop traffic. Further detail was not necessary for the preparation or presentation of her defense. See *State* v. *Flanders,* supra; *State* v. *Stepney,* supra.

The defendant finally claims that she was prejudiced by the trial court's denial of her motion for a bill of particulars because the ambiguity contained in the information renders her incapable of pleading her convictions in bar to any further prosecutions. See *Grady* v. *Corbin,* 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990); *Ashe* v. *Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Lonergan,* supra. In addition to prohibiting the imposition of multiple punishments for the same offense, the double jeopardy clause prohibits successive prosecutions for the same offense after either an acquittal or a conviction. *North-Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *State* v. *Lonergan,* supra, 79. In successive prosecution cases, the double jeopardy clause protects the defendant's interest in not having to "run the gauntlet" twice. *State* v. *Lonergan,* supra, 91. In determining whether a successive prosecution is barred, " 'the general test . . . is therefore a more flexible and pragmatic one, which focuses not on the formal elements of the two offenses but rather

on the proof actually utilized to establish them.' *United States* v. *Ragins,* [840 F.2d 1184, 1188 (4th Cir. 1988)]." Id.

This claim is premature, as the state has not instituted any further proceedings against the defendant based on the conduct at issue in the first prosecution. Indeed, it is impossible for us to determine whether "the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution"; *State* v. *Lonergan,* 16 Conn. App. 358, 368, 548 A.2d 718, aff'd, *State* v. *Lonergan,* supra, 213 Conn. 74; unless we are able to analyze the charges involved in the second prosecution. This is a matter properly decided, if at all, on another day.

The judgment is affirmed.

In this opinion the other judges concurred.