STATE OF CONNECTICUT *v.* JIMMY R. GARDNER, JR.
(AC 25487)

Flynn, C. J., and Rogers and Hennessy, Js.

Argued March 29—officially released June 13, 2006

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence Mariani*, assistant state's attorney, for the appellee (state).

44

FLYNN, C. J. The defendant, Jimmy R. Gardner, Jr., appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and assault in the third degree in violation of General Statutes § 53a-61. On appeal, the defendant claims that (1) the trial court improperly permitted the state to amend its substituted information orally at trial as to the burglary charge by specifying that the crime that the defendant intended to commit during his unlawful entry was threatening, (2) the court improperly denied his motion in limine and (3) the state violated his rights under the due process and equal protection clauses of the fourteenth amendment to the United States constitution by exercising a peremptory challenge in a racially discriminatory manner. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 21, 2001, the defendant lived in a third floor apartment in Waterbury with T[1] and her three children. When T's infant son had difficulty breathing, she opened a window and told a friend whom she had seen walking outside, to telephone for an ambulance because T did not have a telephone. The friend came up to the third floor apartment to tell T that he would telephone for an ambulance and left using the front stairs. As the friend was leaving, the defendant, who had not been home in the five preceding days, knocked on the back door. The defendant then left. T, fearing that

---

[1] In accordance with General Statutes § 54-86e and our policy of protecting the privacy interests of victims of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained.

the defendant would hit her, took two of her children to an apartment on the second floor, in which her relatives lived, and shouted to her stepfather to retrieve her son, who was ill, on the third floor. The defendant burst through the locked door of the second floor apartment and began hitting T as she held her infant daughter. Thereafter, while the defendant's attention was diverted, T locked herself in a bedroom. The defendant could not open the bedroom door, left the apartment to retrieve a gun, returned and told T that he would shoot if she did not open the door. T heard a gunshot, and Rontae Hunter, who was standing near the defendant, saw the defendant shoot the gun into the corner of the wall. The defendant then fled the apartment with the gun in his hand.

The police arrived. After entering the second floor apartment, Waterbury crime laboratory supervisor Lucinda Lopes found a shell casing from a Winchester, Smith & Wesson .40 caliber bullet on top of one couch in the living room, a black holster on the other and a recently made bullet hole in the wall. After examining the bullet hole, Lopes estimated the trajectory and found a Winchester .40 caliber bullet across the street where she estimated the trajectory would end. Marshall Robinson, a firearms examiner, testified that the bullet found on the street was consistent with one having been fired from the shell casing found inside the second floor apartment.

Following a trial, on January 30, 2004, the jury found the defendant guilty of burglary in the first degree, criminal possession of a pistol or revolver, risk of injury to a child and assault in the third degree. Thereafter, the defendant was sentenced to nineteen years incarceration with ten years special parole. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the state was permitted to amend its substituted information orally at trial, thereby depriving him of his constitutional rights to fair notice of the charges against him, to present a defense, to due process and to a fair trial under the fifth, sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution.[2] We are not persuaded.

The following procedural history is relevant to our resolution of the defendant's claim. The state initially charged the defendant by way of short form information with burglary in the first degree in violation of § 53a-101 (a) (1), criminal possession of a pistol or revolver in violation of § 53a-217c (a) (1), risk of injury to a child in violation of § 53-21 (a) (1), assault in the third degree in violation of § 53a-61, reckless endangerment in the first degree in violation of General Statutes § 53a-63 and attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59, incorrectly citing the arson statute, General Statutes § 53a-111. Subsequently, defense counsel filed motions for a bill of particulars on August 23, 2001, and December 5, 2002, generally requesting in both the specific statutory subsections allegedly violated, the specific acts by the defendant that constituted the charged

---

[2] The defendant fails to undertake a separate analysis of his claims that his rights to due process and to a fair trial under the federal constitution were violated. We cannot speculate as to the manner in which these rights might have been violated. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Thorp*, 57 Conn. App. 112, 120 n.4, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). The defendant also fails to provide a separate analysis of his state constitutional claim, and, therefore, we deem it abandoned and will not afford it review. See *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004).

offenses, and the time and date that each offense was committed. Additionally, on December 5, 2002, defense counsel filed a motion for essential facts pursuant to Practice Book § 36-19, requesting that the state amend the information filed by furnishing the defendant with a statement of essential facts claimed to constitute the offenses charged. Although he was represented by counsel, the defendant filed a pro se motion for a bill of particulars on February 18, 2003. None of these motions was ever acted on by the court. However, on April 29, 2003, the state filed a substitute information. Thereafter, on July 3, 2003, the defendant filed another pro se motion for a bill of particulars, generally requesting the same information as his counsel previously had requested. This was not acted on by the court.

The state then filed three substitute informations on August 23, 2003, and January 8 and January 29, 2004.[3] These substitute informations charged the defendant with burglary in the first degree in violation of § 53a-101 (a) (1), criminal possession of a pistol or revolver in violation of § 53a-217c (a) (1), risk of injury to a child in violation of § 53-21 (a) (1) and assault in the third degree in violation of § 53a-61.[4] None of these substitute informations specified that the defendant intended to commit the crime of threatening when he unlawfully

---

[3] The substitute informations evidently were made in response to the motions for bills of particulars filed by the defendant, which were never acted on.

[4] The January 8 and 29, 2004 informations alleged, with respect to the charge of burglary that the defendant "did commit the crime of BURGLARY IN THE FIRST DEGREE in violation of General Statute[s] § 53a-101 (a) (1) in that on or about August 21, 2001, at approximately 4:30 a.m., at or near 335 Bishop Street, Waterbury, Connecticut, the said JAMES/JIMMY GARD-NER did enter unlawfully in a building with intent to commit a crime therein and he was armed with a deadly weapon." In the August 22, 2003 substitute information, the state made the same allegations with regard to the burglary charge, except that it listed an incorrect address for the location of the burglary.

entered the premises.[5] The defendant did not file any subsequent motions for bills of particulars or any motions to press compliance with his previous motions for bills of particulars. On January 21, 2004, after jury selection had begun and five days before the jury was empaneled, the state filed its preliminary request to charge. In the state's requested charge on burglary, the crime of threatening under General Statutes § 53a-62, was listed as the target crime of the burglary. On January 26, 2004, the first day of trial, the defendant filed a motion in limine asking the court to preclude any witness from referring to the defendant's discharging a firearm on August 21, 2001, which the court denied.

The defendant seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] and the plain error doctrine. See Practice Book § 60-5. The defendant claims that the court improperly permitted the state on January 26, 2004, during the hearing on the defendant's motion in limine, to amend its information orally to allege that the crime the defendant intended to commit in his unlawful entry of another's premises was threatening. The defendant argues that the first count of the information charged

---

[5] The state did not have to identify the underlying crime in order to put the defendant on notice of the burglary charge because "in burglary cases, our Supreme Court has stated that evidence of a forcible entry into a dwelling and flight from apprehension is sufficient evidence for the jury to infer an intent to commit a crime inside the dwelling. See *State* v. *Sinclair*, 197 Conn. 574, 577–78, 500 A.2d 539 (1985)." *State* v. *Ward*, 76 Conn. App. 779, 799, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003).

[6] In *Golding*, the court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

him with burglary in the first degree, which requires the state to prove that he entered the second floor apartment with the intent to commit a crime therein, but the information did not specify the crime he entered the apartment to commit. Although the record is adequate for review, and the defendant alleges a violation of a constitutional right, that alleged constitutional violation does not clearly exist, and the defendant was not deprived of a fair trial.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Spigarolo,* 210 Conn. 359, 381, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). This constitutional mandate is satisfied "[w]hen the state's pleadings have informed the defendant of the charge[s] against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and [are] definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." (Internal quotation marks omitted.) Id. It is enough for the state to set forth the statutory designation of the crimes charged, "leaving to the defendant the burden of moving for a bill of particulars where [the defendant] wishes greater detail regarding the manner in which [those crimes were alleged to have been committed]." *State* v. *Nita,* 27 Conn. App. 103, 117, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992), citing *State* v. *Spigarolo,* supra, 382. In order to establish a violation of the right to fair notice, a defendant must show not only that the information was insufficient, but also that he was in fact prejudiced in his defense on the merits

and that a substantial injustice was done because of the lack of specificity in the pleadings. *State* v. *Spigarolo, supra,* 382.

The defendant has failed to show that the informations were insufficient or that he was prejudiced in any way in the preparation of his defense by the fact that the state listed threatening as the crime underlying the burglary charge for the first time in its preliminary request to charge and disclosed this theory during the hearing on the defendant's motion in limine. Our review of the record discloses that the informations contained the specific statutory section that the defendant allegedly violated, together with the date, time and place of the occurrence. The defendant had adequate notice of the burglary charge itself. Subsequent to the filing of the defendant's July 3, 2003 bill of particulars, the state filed three substitute informations charging the defendant with, inter alia, burglary, alleging that the defendant unlawfully entered a building with intent to commit a crime therein and that he was armed with a deadly weapon. Subsequently, the defendant did not file any motions for bills of particulars addressed to the last three amended informations.

The defendant also had notice of the state's theory of threatening as the crime underlying the burglary charge in the filing of the state's preliminary request to charge, which was made five days before the jury was empaneled. The state requested that the following be part of the charge with respect to burglary: "Even if the defendant never actually committed some crime in the premises, if the evidence establishes beyond a reasonable doubt that he was there with such intention, this is sufficient to prove that the defendant entered unlawfully with the intent to commit a crime therein. . . . In this case, the state claims that the crime intended to be committed was threatening in violation of [General Statutes §] 53a-62."

There is no indication from the record that the defendant claimed in the trial court any surprise or prejudice to his defense as a result of the state's preliminary request to charge. The state, again, during the hearing on the defendant's motion in limine, put the defendant on notice of its theory that threatening was the crime underlying the burglary charge, and the defendant again did not claim surprise or prejudice to his defense or object at all. The state did not add threatening as an additional charge, but rather, in its preliminary request to charge and during the hearing on the defendant's motion in limine, listed it as the crime underlying the burglary charge. If the defendant thought the substitute informations were not adequate, he could have filed subsequent motions for bills of particulars or a motion to press compliance, but the defendant did not do so.

It is sufficient for the state to set forth a statutory designation of the crime charged, leaving "the defendant the burden of moving for a bill of particulars where [the defendant] wishes greater detail regarding the manner in which [the crime allegedly was committed]." *State* v. *Nita*, supra, 27 Conn. App. 117. It is the defendant's burden to file such a motion if greater details are sought about how the crime allegedly was committed. *State* v. *Rogers*, 38 Conn. App. 777, 789, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996). The defendant permitted the state to specify threatening as the underlying crime without objection; it follows, therefore, that the prophylactic purpose of the rule to require adequate notice was fulfilled. See *State* v. *Rogers*, supra, 790.

The defendant also cannot prevail under the plain error doctrine. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and

integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). On the basis of our thorough review of the record and briefs, the defendant has not shown that the state's specification of threatening as the underlying crime has impugned the fairness or integrity of or public confidence in the judicial proceedings and, therefore, we conclude that plain error review is not warranted.

## II

The defendant next claims that the court improperly denied his motion in limine. Specifically, the defendant argues that he was prejudiced and the jury's emotions were aroused because the court improperly denied the motion and thereby permitted the state to introduce evidence that the defendant fired a gun when the state did not charge him with any crime alleging that he had fired a gun. We are not persuaded.

"A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding. Practice Book § 42-15. This court has said that [t]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . .

"Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be

reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Holmes*, 64 Conn. App. 80, 85, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . One situation in which evidence is more prejudicial than probative occurs when the facts offered may unduly arouse the jury's emotions, hostility or sympathy . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 91 Conn. App. 112, 122, 881 A.2d 371, cert. denied, 276 Conn. 909, 886 A.2d 423 (2005).

The premise of the defendant's motion in limine was that the evidence that the defendant fired a gun was not relevant to the charge of criminal possession of a firearm, pursuant to § 53a-217c (a) (1), because operability of the firearm was not an element of the offense. The state argued at the hearing on the motion, however, that such testimony was relevant for the following reasons: The evidence was needed to prove the charge of burglary in the first degree because the gun itself was not recovered, and that crime requires that the defendant brandish a deadly weapon, which under General Statutes § 53a-3 (6), includes a weapon capable of firing a shot; the intended crime underlying the burglary charge was threatening, which requires that the defendant have the present ability to carry out the threats; and because the gun was not recovered, the evidence of the spent shell casing and bullet was needed to prove

that the barrel of the gun was less than twelve inches in length pursuant to General Statutes § 29-27, an element of the charge of criminal possession of a pistol or revolver. In denying the defendant's motion, the court concluded that the state was obligated to prove the elements of the crimes charged.

We conclude that the court reasonably determined that the evidence was relevant because it tended to support the elements of the crimes charged. The state listed the reasons the evidence relating to the firing of the gun was relevant and explained how that evidence was necessary to prove the elements of some of the charges given that the gun was not recovered. The court had broad discretion to determine that the evidence was relevant and admissible, in this case, in order for the state to prove the elements of the crimes charged. The court also reasonably could have concluded, although it did not expressly so state on the record, that the probative value of that evidence outweighed its prejudicial effect and that the evidence did not unduly arouse the jury's emotions, hostility or sympathy. The court instructed the jurors that they must not be influenced by their "likes, dislikes, opinions, prejudices or sympathy." We are not persuaded that the court abused its discretion in denying the defendant's motion in limine.

### III

The defendant next claims that the state violated his rights under the due process and equal protection clauses of the fourteenth amendment to the United States constitution by exercising a peremptory challenge in a racially discriminatory manner in violation of *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We are not persuaded.

"In *Batson* [v. *Kentucky,* supra, 476 U.S. 79] the United States Supreme Court recognized that a claim

of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . The court concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his [or her] view concerning the outcome of the case to be tried . . . the Equal Protection Clause forbids [a party] to challenge potential jurors solely on account of their race . . . ." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 620–21, 841 A.2d 181 (2004).

There are "several specific factors that may indicate that [a party's removal] of a venireperson through a peremptory challenge was . . . motivated [by race or gender]. These include, but are not limited to: (1) [t]he reasons given for the challenge were not related to the trial of the case . . . (2) the [party exercising the peremptory strike] failed to question the challenged juror or only questioned him or her in a perfunctory manner . . . (3) prospective jurors of one race [or gender] were asked a question to elicit a particular response that was not asked of the other jurors . . . (4) persons with the same or similar characteristics but not the same race [or gender] as the challenged juror were not struck . . . (5) the [party exercising the peremptory strike] advanced an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically . . . and (6) the [party exercising the peremptory strike] used a disproportionate number of peremptory challenges to exclude members of one race [or gender]." (Internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 284–85, 750 A.2d 1059 (2000).

"[A]n explanation [given in support of the use of a peremptory challenge] need not . . . be pigeon-holed as wholly acceptable or wholly unacceptable . . . and even where the acceptability of a particular explanation is doubtful, the inquiry is not at an end. In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent. . . . . In reviewing a trial court's finding that the reasons given by a prosecutor for the use of a peremptory challenge were not pretextual, [our Supreme Court] previously has declined to review all of the reasons given by the prosecutor in support of his or her use of the peremptory challenge once [it] concluded that at least one of the reasons articulated was race neutral. . . . To clarify any possible ambiguity regarding the proper role of the trial court in resolving *Batson* claims . . . the trial court must consider all of the proffered reasons together in determining whether, as a factual matter, the party exercising the peremptory challenge was motivated, in whole or in part, by impermissible discriminatory considerations.

"Finally, the trial court's decision on the question of discriminatory intent represents a finding of fact that will necessarily turn on the court's evaluation of the demeanor and credibility of the attorney of the party exercising the peremptory challenge. . . . Accordingly, a trial court's determination that there has or has not been intentional discrimination is afforded great deference and will not be disturbed unless it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Hodge*, 248 Conn. 207, 224, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999).

In this case, during voir dire of venireperson L,[7] defense counsel asked L if he had ever been a victim

[7] We refer to the juror by initial to protect his legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

of a crime, to which L responded that approximately twenty-five years ago he was "charged with something . . . and I wasn't even there." When asked if this caused him to have a negative opinion of either a defense attorney, prosecutor, judge, the court system or police, L stated that the experience left him with a negative impression but that Waterbury "was a whole different place" twenty-five years ago. When questioned by the state, L responded that he had been convicted of robbery, had appealed from his conviction, had been granted a new trial and ultimately had been "let free." L further stated that he also had been arrested approximately five years ago in Waterbury for breach of the peace.

After the voir dire of L, the state requested that the court excuse him for cause, reasoning that although L stated that his experience with his robbery conviction would not affect his decision in this case, it strained belief that someone who was convicted wrongly could be a fair juror in any criminal case. The court denied the state's challenge for cause, reasoning that it did not detect any acrimony, bitterness or bias. The state then exercised a peremptory challenge to remove L. Defense counsel then made a *Batson* challenge, requesting that the state provide a race neutral reason on the record for exercising the peremptory challenge. The state argued that it believed that L was biased in favor of the defendant because he identified with the defendant when he indicated that he had been falsely convicted of a crime in Waterbury and that he had been arrested in Waterbury as recently as five years ago. The court then permitted the peremptory challenge, reasoning that it was not exercised in a discriminatory fashion but that a neutral and detached reason was stated for the record.[8] After the remainder of the jury was selected,

---

[8] The court stated in full: "Whether that was a slip of the tongue, I don't know, but that particular—this particular venireperson indicated, quite clearly for the record, that he could be a fair and impartial juror. The

the state asked the court to let the record reflect that the jury was comprised of at least two African-Americans. Defense counsel agreed, and the court ordered the record to so reflect.

The defendant argues that the court did not conduct a proper *Batson* hearing because it did not consider the six *Batson* factors before making its determination. Although the court did not expressly state the factors, that does not mean that the court did not consider them because "[j]udges are presumed to know the law . . . and to apply it correctly." (Internal quotation marks omitted.) *State* v. *Stern*, 65 Conn. App. 634, 648, 782 A.2d 1275, cert. denied, 258 Conn. 935, 785 A.2d 232 (2001). The reasons the state offered for exercising a peremptory challenge as to L included the fact that he had a prior criminal history in Waterbury, specifically that he stated that he had been in a situation similar to that of the defendant because he was convicted of the crime of burglary and believed that he had been falsely accused, and was arrested for breach of the peace five years ago. Our Supreme Court has stated: "We decline to ascribe a racial animus to the state's excusal of a venireperson with an arrest record simply because that venireperson was black. We agree with courts in other jurisdictions that this concern consti- tutes a neutral ground for the state's exercise of a peremptory challenge to excuse a black venireperson."

issue before the court is whether or not the challenge was exercised in a discriminatory fashion. Based upon what I've heard and viewed here in the courtroom, and sitting as a judge here, I don't find that this challenge was exercised in a discriminatory fashion. And the *Batson* challenge, if that's what it is, is satisfied by the neutral and detached reason counsel has stated for the record. The court is always mindful in areas such as this, the sensitivity that is involved in this type of issue, particularly with the nature of the defendants that often come before the court and the jurors who often appear. I understand, counsel's challenge, and the state, pursuant to our law—*State* v. *Holloway*, [209 Conn. 636, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989)], the neutral and detached reason has been stated for the record. Everyone is doing their job."

*State* v. *Smith*, 222 Conn. 1, 14, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992).

There was certainly no pattern of racial bias or discrimination in this case. The defendant, an African-American, was convicted by a jury that contained at least two African-American panel members. The defendant therefore could not show that the state used a disproportionate number of peremptory challenges to exclude members of one race. The court's finding that the state's reasons for exercising the peremptory challenge were race neutral was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.